PIEPHO ET AL. *v.* GESSE.

[No. 15,946. Filed January 16, 1939. Rehearing denied May 3, 1939.]

*Grant Crumpacker* and *Edwin F. Knight,* for appellants.

*G. L. Burns, Kelley & Ryan* and *Albert Stump,* for appellee.

BRIDWELL, J.—Appellee brought this action against appellants to recover damages for personal injuries sustained by him, his complaint alleging in substance that he was employed by appellants as a farm hand and laborer; that his duties consisted generally of following the instructions given him by the defendants concerning the operation of said farms, in planting, cultivating and harvesting various crops, in caring for cattle, livestock and poultry, in filling silos, and in generally performing such duties as are ordinarily done and performed on farms; that he received the injuries for which recovery is sought while engaged in assisting in the filling of a certain silo for appellants; that at the time of receiving said injuries he was greasing the "silo filler" which was being used for the purpose of filling said silo; that said silo filler was operated by a certain machine, and was then and there defective, and in a bad state of repair, the gears thereon being wholly exposed and not covered nor protected by any guard or other device which would conceal said gears and prevent injury to persons working at or near the same; that the appellants, "knowing said condition, carelessly, willfully and maliciously permitted the said silo filler to be so operated in its then defective condition, and permitted this plaintiff (appellee) to operate the same at great risk and hazard"; that while operating and greasing said silo filler appellee's glove became caught in the exposed gears, and his left hand and wrist were violently drawn into such gears, and torn and crushed; that as a result of the injury it became and was necessary to amputate said hand and wrist, which was done; that the said injuries were and are due solely to the

negligence and carelessness of appellants, and were not occasioned by any fault or negligence on the part of appellee. Appellants, by answer, denied the allegations of the complaint, and after the closing of the issues the cause was tried by a jury which returned its verdict in favor of appellee as against both appellants in the sum of $4,000.00. Judgment in accordance with the verdict was rendered. A separate motion for a new trial was duly filed by each appellant. These motions were each overruled, and an exception to such rulings properly reserved. This appeal followed. Appellants filed separate assignments of errors, each of them assigning as error that the court erred in overruling the respective motions for a new trial.

Each motion for a new trial is based on a number of reasons stated therein, but in their brief appellants expressly state "only two of said reasons are to be considered on this appeal, and they are as follows: (1) the verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law."

Appellants contend that the action brought by appellee is one governed by common law principles; that the doctrine of assumed risk applies; that in the trial of the cause this doctrine was completely ignored by the court, the question of assumption of risk not being submitted to the jury, nor any instruction explaining such doctrine and its applicability to the case given. It is asserted, "that the cause was tried on a wrong theory as to the law of the case, and that the trial court was charged with the duty of giving general instructions on the question of assumed risk, even though no instructions were tendered by appellants."

Our statute relative to the duty of the trial court in instructing a jury is found in Section 2-2008 Burns' Ind. Stat. Anno. 1933 (§341 Baldwin's 1934). Clause four of this section provides that "when the evidence is con-

cluded, and either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered and signed by the party or his attorney asking the same, and delivered to the court." Clause five of the section provides "that the court shall give general instructions to the jury, which shall be in writing, and be numbered and signed by the judge, if required by either party."

Only one of the instructions given by the court to the jury is set forth in the brief of appellants. It is conceded that appellants failed to except to this instruction, or to any of the instructions given. It is not claimed that appellants, or either of them, tendered to the court any instruction on "assumption of risk" which the court erroneously refused to give. Conceding that the issues formed by the pleadings were such that the trial court should have instructed the jury concerning the doctrine of assumption of risk, yet the failure to do so, in the absence of any request that the jury be instructed concerning such doctrine, cannot be seized upon by appellants as an available error requiring a reversal of the judgment. As was said in the case of *Krack* v. *Wolf* (1872), 39 Ind. 88, 90:

> "It would hardly conduce to the fair and proper administration of justice to allow a party to take his chances for a verdict, and then, if he was unsuccessful, to claim there should be a new trial because the court had not instructed the jury, when he neither asked it nor excepted to its not having been done."

Where the court fails to give instructions relevant and proper for consideration by the jury under issues submitted for trial, such omission on the part of the court must be called to its attention before the jury retires to consider of its verdict, so that the court may supply the omission, and then, if there be a failure to instruct as to the omitted element, an exception should be re-

served. The failure in the instant case to request of the court that it instruct the jury on assumption of risk operates as a waiver of any objection of such omission to do so. It is too late to make the objection for the first time on appeal. See *Dorsey* v. *State* (1913), 179 Ind. 531, 536, 100 N. E. 369; *Marks* v. *Jacobs* (1881), 76 Ind. 216, 218; *Murray* v. *State* (1866), 26 Ind. 141, 142.

The other contentions made by appellants that the evidence is not sufficient to sustain the verdict, and that such verdict is contrary to law, present a more serious question. It is to be noted that the gist of the negligence charged in the complaint is negligence in permitting appellee to operate the ensilage cutter (or "silo filler") with the gears thereon wholly exposed and not covered by any shield, guard, or other device to prevent injury to persons working at or near the same. There is no conflict in the evidence relative to this fact; the gears were wholly exposed. It also appears from the evidence without dispute that appellee knew of such condition, it being an open and obvious one which any person using the machine could and ordinarily would see and observe. There is no evidence tending to prove that appellee was ignorant of such condition when he started to operate said ensilage cutter, nor is any such contention made; neither is it claimed that he slipped or stumbled, or came in contact with the exposed and unprotected gears because thereof. His injury occurred when he attempted to grease the gears of the ensilage cutter when it was in operation, and without throwing it out of gear so that the wheels constituting a part of the gears would cease to revolve. The evidence shows that when the machine involved here was originally purchased some years prior to the injury of appellee, it was equipped with a shield or guard covering the gears, which was removed by the original purchaser, who owned the machine eight or

nine years, and that such shield was never thereafter used either by him, the person to whom he sold it, or by Albert Piepho, the last owner. There is uncontradicted evidence to prove that the gears could not be greased without removing the guard or shield, had such gears been so protected. Since it is without dispute that appellee was injured while greasing the gears of the machine, and that this could not be done without removing any shield or guard which might have been used to cover said gears, it affirmatively appears that the negligence charged in the complaint was not the proximate cause of the injury.

At the time of the accident appellee was a man of mature years, who had been employed as a farm laborer on the farm where he was injured for approximately three years, and had observed the operation of such ensilage cutter each year of his employment. The evidence establishes the relationship of master and servant, and there is no dispute concerning the fact of the existence of such relationship.

In the case of *City of Decatur* v. *Eady, Exrx.* (1917), 186 Ind. 205, 209, 115 N. E. 577, our Supreme Court said:

"At common law a servant who sought to recover damages for personal injuries resulting to him through the negligence of his master was required to prove not only that the master had been guilty of negligence which proximately caused the injury, but also that the servant had neither actual nor constructive notice of the danger created by the master's negligence. If the servant knew of the dangerous condition or could have known of it by the exercise of reasonable care, he was held to have assumed the risk incident to such danger."

The common law rule is still in force in this state, except in instances where it has been abrogated or modified by statute. It is applicable in the instant case, since there is no statute which can be said to change or modify the rule under a state of

facts such as the record here discloses. Although we have certain statutes which do modify the rule in some respects (Acts 1911, chap. 88, p. 145; Sec. 40-1101 et seq. Burns' Ind. Stat. Anno. 1933, §10100-1 et seq. Baldwin's 1934; Acts of 1929, ch. 172, p. 536; Sec. 40-1201 et seq. Burns' Ind. Stat. Anno. 1933, §16377 et seq. Baldwin's 1934) it is only under the conditions specified in the statute that the common law rule of assumption of risk does not prevail. See *City of Decatur* v. *Eady, supra.*

It is earnestly contended that this verdict is contrary to law, and that for this reason the judgment should be reversed. In view of the issues, and of certain undisputed evidence relating to appellee's knowledge of the conditions existing, and his own action in the face of such known danger, we are of the opinion that such contention must be sustained. In *Bosseker* v. *Cramer* (1862), 18 Ind. 44, 45, our Supreme Court said:

> "We think that a verdict which is contrary to law is one which is contrary to the principles of law as applied to the facts which the jury was called upon to try; contrary to the principles of law which should govern the cause."

See, also: *Marion County Construction Co.* v. *Kimberlin* (1933), 96 Ind. App. 145, 184 N. E. 574; *Cohen* v. *Shubert* (1935), 100 Ind. App. 315, 320, 195 N. E. 574, and cases there cited.

In the instant case, we conclude that the verdict is contrary to law because of its being contrary to the principles of law which are applicable and controlling under the issues and the evidence. The motions for a new trial should have been sustained. For cases supporting the conclusion reached, see *Philips* v. *Michaels* (1894), 11 Ind. App. 672, 39 N. E. 669; *Wortman* v. *Minich* (1901), 28 Ind. App. 31, 62 N. E. 85; *Beard* v. *Goulding* (1914), 55 Ind. App. 398, 103 N. E. 875;

*W. B. Conkey Co.* v. *Larsen* (1910), 173 Ind. 585, 91 N. E. 163; *City of Decatur* v. *Eady, supra.*

Judgment reversed, with instructions to sustain the motions for a new trial, and that further proceedings be consistent with this opinion.