RIETH-RILEY CONSTRUCTION COMPANY, INC. *v.*
KENNETH E. MCCARRELL.

[No. 1-474A70. Filed April 15, 1975. Rehearing denied May 15, 1975.]

*R. Stanley Lawton, William L. Skees, Jr., John H. Himelick, Kenneth A. Sullivan, Ice Miller Donadio & Ryan,* of counsel, of Indianapolis, *Himelick & Smith,* of counsel, of Connersville, *Hunter, McCoy, Sullivan & Chalfant,* of counsel, of Winchester, for appellant.

*John Cook,* of Winchester, *Darrel K. Peckinpaugh, Warner, Peckinpaugh & Warner,* of counsel, of Muncie, for appellee.

LYBROOK, J.—Plaintiff-appellee McCarrell was awarded damages in the sum of $111,150.00 for injuries sustained when his automobile collided with a piece of pipe which had entered the traveled portion of State Road #3 near New Castle while being dragged along the berm of the road by defendant-appellant, Rieth-Riley Construction Co., Inc. Rieth Riley's appeal presents the following issues for review:

1. Whether the jury was improperly instructed upon loss of earnings as an element of damages.

2. Whether the damages were excessive.

3. Whether the court erred in refusing to give two of defendant's instructions regarding weight of testimony, and credibility of witnesses.

4. Whether the court erred in admitting a prior statement of a witness.

5. Whether the court erred in permitting the plaintiff to question prospective jurors, during *voir dire,* concerning certain legal principles.

6. Whether the jury verdict was supported by sufficient evidence.

The record reveals that on May 5, 1971, the date of the collision, Rieth-Riley, pursuant to a contract with the State of Indiana, was in the process of widening State Road #3 in and around New Castle. However, at the site of the collision the highway had not yet actually been widened, and only the original two-lane road was in existence. Grading had been completed where the accident occurred, and there was a drop off at the side of the road of ten to fifteen inches. Nevertheless, traffic had been maintained and was, in fact, using this highway on the date of the accident.

On that day a grading procedure was taking place approximately one mile south of the point of collision. In the process of grading the area it was necessary that Rieth-Riley remove an old gas main that followed the contour of the terrain. A backhoe was used to remove the pipe from the ground. In order to transport the pipe to a nearby storage yard it was necessary to cut two holes in it, insert a chain through the holes and fasten the chain to the backhoe. Terry Stevenson, operator of the backhoe, then commenced to drag the pipe along the unfinished section of the road toward the storage yard, which was approximately ¾ of a mile away. The pipe was steel or cast heavy material, six inches in diameter and two hundred sixty (260) feet long. The pipe was being dragged or pulled over the ground approximately fifteen to twenty feet from the edge of State Road #3. Donald Pound, employee-foreman of Rieth-Riley, walked along the side of the pipe from shortly behind the backhoe to the end of the

pipe to make sure that there were no incidents concerning the pipe. Nothing unusual occurred during the ¾ of a mile to a mile traveled to the location of the accident. Pound testified that he had to walk slower than normal to keep pace with the pipe.

There was no work in progress in the area where the collision occurred, nor was there other equipment in this area. There were no other workmen, watchmen, flagmen, construction equipment, or warning signs in the area where the accident occurred.

Stevenson had to make a turn of the backhoe in order to pull the pipe into the storage yard area. Because of a bow in the pipe, the pulling and the strain when changing angle and direction caused the pipe to make some vibrating type movements. These vibrations resulted in the pipe flopping or popping up onto the traveled portion of State Road #3. Pound testified that the pipe extended three or four feet upon the traveled portion of the road. At the time the pipe came upon the roadway McCarrell's car was twenty to thirty feet away. The collision occurred quite suddenly with McCarrell's car striking the pipe while the pipe was moving. Pound testified that there was nothing unusual about the speed of plaintiff's automobile. Additionally, Stevenson, the operator of the backhoe, knew nothing of the accident. McCarrell did not have time to turn his automobile and avoid the pipe. The only eyewitness, Pound, stated that the pipe was warped and that "when you drag [the pipe] along old Mother Earth anything can happen."

## I.

Initially, Rieth-Riley submits that the trial court erred in giving the following final instruction over timely objections:

"If you find for the plaintiff on the question of liability, you then must determine the amount of money which will fairly compensate plaintiff for those elements of damage which were proved by the evidence to have resulted from the negligence of defendant. You may consider:

\* \* \*

(f)   The value of lost time, earnings or salary, and loss or impairment of earning capacity. . . ."

This instruction informs the jury of a plaintiff's right to be compensated for the value of time which he has lost because of the injury. Rieth-Riley contends, however, that this instruction is erroneous in that it authorizes a recovery for McCarrell for lost time when the evidence conclusively reveals that at the time of the accident McCarrell was unemployed. Rieth-Riley argues that a plaintiff unemployed at the time of the accident is not entitled to recover for lost time which, according to Rieth-Riley, is lost earnings or salary.

Resolution of this issue necessitates a close examination of an element of damages generally referred to as impaired earning ability. In a personal injury action, upon a proper showing of liability, the plaintiff is entitled to recover for resultant impairment of earning ability, if any. Although called "impairment of earning ability", that which the plaintiff is entitled to recover is actually the value of the *time* which he has lost and probably will lose because of the injury. 22 Am. Jur. 2d, Damages § 89. Historically, many courts have recognized that this element of damage—value of time—is comprised of two distinct sub-elements which are usually denominated:

(1)   loss of time, and
(2)   decreased earning capacity. See, *Scott* v. *Nabours* (1973), 156 Ind. App. 317, 296 N.E.2d 438; 22 Am. Jur. 2d, Damages §§ 89, 90, 92.

The first of these sub-elements, loss of time, refers to the time which the plaintiff has lost prior to trial because of his injury, while the second, decreased earning capacity, designates the time which probably will be lost after trial. In both cases, it must be emphasized that the compensable element is *time*. It is the *time* which belonged to the plaintiff and which plaintiff's injury has deprived him of that is compensable. Thus, most courts permit an employed plaintiff to recover for his time lost even though an insurance company has compensated him for lost wages or his employer

continued his wages for all or part of the time of his injury. 22 Am. Jur. 2d, Damages §§ 208, 210.

In the case at bar, it is the first of the sub-elements of impairment of earning ability, loss of time, with which we are concerned. Rieth-Riley maintains that since McCarrell was not employed at the time of the collision, loss of time was not an appropriate element of damage for jury consideration. As authority Rieth-Riley relies heavily upon the language of *Scott* v. *Nabours, supra.* In *Scott,* the court recognized the distinction between the two sub-elements of impairment of earning ability. In doing so, however, the court designated the first element (loss of time) as loss of earnings. While loss of earnings is an appropriate element to consider in determining the value of plaintiff's loss of time, it is by no means the exclusive measure. Generally, see 22 Am. Jur. 2d, Damages § 91.

Further insight to this question of compensability of loss of time for an unemployed plaintiff may be gained from the following:

> "Damages are awarded an injured plaintiff for the loss of his capacity to earn money; they are not awarded for his lost earnings. Therefore, it is not necessary for the plaintiff to be employed at the time of the injury for the jury to be able to compensate the plaintiff both for the value of the time lost after the injury and before the trial and for the value of the impairment to his capacity to earn money in the future. If sufficient evidence has been introduced, substantial damages may be awarded the unemployed plaintiff for both of these damage elements (lost time and decreased earning capacity). The time belonged to the plaintiff, who had a right to work and to earn money. Even though the plaintiff was not employed, he is entitled to full compensation for an impairment of this right—assuming, of course, that the impairment was the result of the fault of the defendant.

> "On this basis, an injured housewife has been granted a substantial recovery for the value of the decrease in earning capacity resulting from defendant's fault. Likewise, a person who is performing services gratuitously may recover damages for lost time and impaired earning capacity, and a

620

verdict which does not include these elements has been reversed on appeal.

"Difficulty arises in measuring the value of an unemployed plaintiff's lost time and capacity to earn money in the future. While the law is clear that the plaintiff has a right to his own time—which right cannot be taken from him by a tortfeasor without compensation—the law is also clear that damages cannot be awarded on the speculation, passion, or guess of the injury. Where damages are not awarded against the tortfeasor for the impairment of earning ability, it is often not because the plaintiff's right was not unlawfully invaded, but because damages were not proved with the requisite degree of certainty. Evidence must be introduced which removes any award from the area of speculative damages. Courts, therefore, admit evidence of plaintiff's age, life expectancy, health, training, experience, intelligence, and talents, as well as the nature of the injuries, to aid the jury in determining reasonable compensation." (Footnote omitted.) 22 Am. Jur. 2d, Damages § 100.

In light of the above discussion we are compelled to conclude that the mere fact that a plaintiff was unemployed at the time of his injury does not, in and of itself, preclude recovery for value of the time lost from the date of injury to trial. Accordingly, we find no error demonstrated in the giving of the above instruction.

## II.

Secondly, Rieth-Riley contends that the damages awarded, $111,150, were excessive. We note that a portion of appellant's argument concerns a request for remittitur of $28,000 due to the alleged erroneous instruction discussed above. Having concluded that the instruction was proper and that the jury could properly consider the value of the time lost by McCarrell from the date of injury to the date of trial and award damages, if any, we reject appellant's request.

Appellant also suggests that reversal is necessary because the damages awarded are at first blush outrageous and unreasonable.

As stated in *State* v. *Daley* (1972), 153 Ind. App. 330, 287 N.E.2d 552:

"In order to justify a reversal on grounds of excessive damages, the amount of damages assessed must appear to be so outrageous as to impress the court as being motivated by passion, prejudice and partiality. New York Central Railroad Co. v. Johnson, *supra;* Northern Indiana Public Service Co. v. Otis, *supra;* Hines v. Nichols (1921), 76 Ind. App. 445, 130 N.E. 140; City of Evansville v. Rinehart (1968), 142 Ind. App. 164, 233 N.E. 2d 495.

"Reversal is not justified, however, if the amount of damages awarded is within the scope of the evidence before the court. Northern Indiana Public Service Co. v. Otis, *supra;* First Bank & Trust Co. of South Bend v. Tellson (1954), 124 Ind. App. 478, 118 N.E.2d 496."

In our opinion, the evidence presented was sufficient to justify the damages awarded. McCarrell was hospitalized several times due to the injuries sustained in the collision, twice for back surgery. He now wears a back brace occasionally and continues to experience pain for which he is under medication. McCarrell also sustained a deformity of his right hand in the collision.

As a result of these injuries McCarrell was unable to retain a position which he had obtained with the National Fleet Company of Muncie, Indiana. McCarrell's testimony was confirmed by the testimony of Dr. Richard Weisner. Dr. Weisner further testified that he considered the plaintiff to be "totally and permanently impaired" as a result of the sustained injuries.

McCarrell testified that he earned approximately $13,000 per year prior to the accident. His state income tax returns reflected earnings of approximately $7,000 for years prior to the accident, but he was also receiving benefits in the form of an expense account and company car which benefits were not reported as income. McCarrell had been employed most of the time prior to the accident, and one witness testified that he could now place McCarrell in a position at $12,000 to $14,-000 per year, if McCarrell was not injured.

The parties having stipulated McCarrell's life expectancy at more than 28 years, the jury could consider decreased

earning capacity for the 20 years between the date of trial and McCarrell's 65th birthday. A computation using the lowest rate of $7000/year would result in a total of $140,000. And this amount ignores almost $7,000 in medical expenses, allowance for the effect of inflation (both on the value of money and on the salary scale), and compensation for pain and suffering. From these calculations, particularly in light of Rieth-Riley's failure to suggest any reason for the jury to have acted as a result of passion or prejudice, it is clear that this court cannot hold these damages to be excessive.

## III.

Thirdly, Rieth-Riley maintains that it was error to refuse to give Defendant's Tendered Instructions Nos. 2 and 5, which follow:

### "Defendant's Tendered Instruction No. 2

If you believe from the evidence that any witness including any party, has willfully and knowingly testified falsely as to any material fact in this case, you may disregard his entire evidence except so far as he is corroborated by other credible evidence or by other equally credible facts and circumstances proved in the trial.

### "Defendant's Tendered Instruction No. 5

Certain physicians have been called as witnesses in this case. They were permitted to state the physical history which the plaintiff gave to them concerning his accident and his injuries and his past physical condition. Thereafter, based upon those facts and upon the physical examinations made by the physicians they were asked and expressed their opinions concerning the causes of the plaintiff's present physical condition. The weight to be given such opinions manifestly depends upon whether or not the facts told to them by the plaintiff and upon which they based their opinions were true. Among other things, you may consider whether such facts as given by the plaintiff to the physicians are true in deciding what weight, if any, you will give to the opinions of such physicians."

Defendant's Tendered Instruction No. 2 is a statement of which has in the past been referred to as the doctrine of *"falsus in uno, falsus in omnibus". Lemmon* v. *Moore* (1884), 94 Ind.

40; *Hooper* v. *Preuss* (1941), 109 Ind. App. 638, 37 N.E.2d 687. Moreover, in *Hooper,* the court specifically approved a substantially similar instruction as a correct statement of the law.

Since the instruction was a correct statement of the law, the issue becomes whether the instruction was properly refused on another ground. An important consideration in this respect is the familiar principle that a party, upon proper request, is entitled to have given an instruction based upon his theory of the case, if it is within the issues and if there is evidence to support it. *Indianapolis Horse Patrol* v. *Ward* (1966), 247 Ind. 519, 217 N.E.2d 626; *Moore* v. *Funk* (1973), 155 Ind. App. 545, 293 N.E.2d 534. However, it is equally true that an instruction may be refused if it is so repetitious as to be an overemphasis of the issue, *Reely* v. *Applegate Elevator Co.* (1972), 154 Ind. App. 136, 289 N.E.2d 301, or if the issue raised is adequately covered by other instructions. *Williams* v. *State* (1974), 161 Ind. App. 57, 314 N.E.2d 764; *Dossett* v. *State* (1974), 159 Ind. App. 446, 307 N.E.2d 286; *Clinton* v. *State* (1974), 159 Ind. App. 189, 305 N.E.2d 897.

In this regard, the following instructions pertaining to credibility of witnesses were actually given:

"INSTRUCTION NO. 2   You are the sole and exclusive judges of the credibility of the witnesses and of the weight of the evidence and testimony of the witnesses. It is your duty and province to consider all of the evidence in this case and to determine what facts have been proven or not proven. If you meet with conflicts in the evidence if you can reasonably do so, so reconcile them as to believe all of the testimony of all of the witnesses, but you are the judges of the truthfulness or falsity of the evidence or testimony given before you and if you cannot so reconcile the evidence so as to believe all of the testimony of all of the witnesses, then you will determine whom you will believe and what you will believe and the credibility and the weight you will give to any and all such witnesses.

"INSTRUCTION NO. 5   If there are conflicts in the evidence, it is your duty to reconcile the conflicts, if you can, on the theory that each witness has testified to the truth.

If you cannot so reconcile the testimony, then it is within your province to determine whom you will believe and whom you will disbelieve.

"You should weigh the evidence and give credit to the testimony in light of your own experience and observations in the ordinary affairs of life.

"INSTRUCTION NO. 11. The credibility of a witness may be attacked by introducing evidence that on some former occasion the witness made statements orally or in writing inconsistent with his testimony in this case. Evidence of this kind may be considered by you in connection with all other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness.

"INSTRUCTION NO. 11A. Inconsistent statements made by a party whether made under oath or otherwise may be considered by you as admissions against that party and are admissible as proof of those very facts admitted or stated even though they are not made under oath."

In our opinion, the instructions given adequately covered the issues sought to be exposed by defendant's tendered instruction No. 2. We find no error in refusing the instruction.

Defendant's tendered instruction No. 5 also refers to the question of witness credibility. However, the instruction states that the physicians' opinions were "manifestly" dependent upon the truth of the facts related by McCarrell. Since the record reveals that the physicians' opinions were predicated upon *both* substantive objective and subjective criteria we find this instruction to be improper in its direction that the physicians' opinions were manifestly dependent upon McCarrell's credibility. This finding, together with the number of other "credibility instructions" actually given mandates rejection of appellant's assertion of impropriety in refusing the instruction.

## IV.

Rieth-Riley asserts that the court committed reversible error in permitting McCarrell's attorney to read the following statement to the jury:

"Well, I'll reword it in this way then. If I had been driving that automobile and that pipe had popped in front of me

like that there would have been nothing I could have done about it."

This statement had been made previous to trial by Pound, the only eyewitness to the collision. Rieth-Riley attacks the trial court's action in admitting this statement, claiming that it was improper impeachment evidence. We cannot agree.

The situation in the case at bar may be analogized to that in *Patterson* v. *State* (1975), 263 Ind. 55, 324 N.E.2d 482. In *Patterson,* out-of-court statements by two witnesses which were, for the most part, consistent with their in-court testimony, were nevertheless declared to be admissible as substantive evidence:

"As in *Skaggs* [*Skaggs* v. *State* (1973), 260 Ind. 180, 293 N.E.2d 781], the out-of-court asserters, Miss Robinson and Mrs. Patterson were upon the witness stand at the time their out-of-court assertions were offered. Neither denied giving the statements attributed to her, nor did either profess ignorance of such statements. It was, therefore, not necessary for the truth of the out-of-court assertions to rest upon the credibility of persons not present and then subject to cross-examination concerning the statements. Under such circumstances, since the matters asserted were relevant to the issues, there was no reason to reject the statements, as substantive evidence, simply because they had been made at a time when the witnesses were not subject to cross-examination."

Since the matters contained in Pound's out-of-court statement were relevant to the issues in the case at bar, and since he admitted making the prior statement, unless other reasons exist for not permitting the evidence, it is admissible under the guidelines of *Patterson* as substantive evidence.

We note however, that Rieth-Riley has argued another reason for not permitting the statement. Rieth-Riley maintains that the statement is inadmissible because the opinion expressed therein was improper opinion evidence by a lay witness. Rieth-Riley submits that Pound's statement was in essence a conclusion opinion as to whether McCarrell could have avoided hitting the pipe. Such a statement, according to Rieth-Riley, invades the province of the jury in deciding

whether the accident could have been avoided by McCarrell. Rieth-Riley maintains that the decision on this ultimate issue was the responsibility of the jury and not the witness.

The question of admissibility of lay witness opinion testimony on ultimate fact issues has recently been subject to reexamination by many courts and legal scholars. See, McCormick, Evidence § 12 (2d Ed. 1972). Under previous approaches, the rule in many jurisdictions, including Indiana, was a *per se* exclusion of lay witness opinion on an ultimate question which the jury was required to decide. *Southern Indiana Power Co.* v. *Miller* (1916), 185 Ind. 35, 111 N.E. 925; *New Jersey, I. & I. R. Co.* v. *Tutt* (1907), 168 Ind. 205, 80 N.E. 420. This strict approach, in our opinion, is unduly restrictive in that it would operate so as to deprive the trier of fact of useful information in situations where opinion testimony on an ultimate fact in issue would be the most desirable or perhaps the only vehicle for relating a particular happening or fact. Moreover, the strict approach of prohibiting the "invasion of the province of the jury" by opinion testimony on ultimate factual issues is subject to misapplication in that it is easily confused with the generally accepted rule that expert opinion should not be heard on commonplace matters.

Through recognition of these shortcomings of the strict exclusionary approach, the majority of state courts have now adopted the philosophy that provided all other admissibility requirements are met, an opinion upon an ultimate fact may be given. See general discussion and cases cited in 32 C.J.S., Evidence § 446, and McCormick, Evidence § 12 (2d Ed. 1972). Exemplifying the new approaches to this problem is Rule 704 of the Rules of Evidence for United States Courts and Magistrates:[1]

"Rule 704.
OPINION ON ULTIMATE ISSUE
Testimony in the form of an opinion or inference otherwise

---

1. Effective July 1, 1975.

admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Thus the *per se* exclusion rule has been abrogated, and the trial judge at his discretion, may in an appropriate case, permit such evidence. In exercising his discretion, the trial judge should consider the nature of the issue and the offered opinion in light of all attendant circumstances of the particular case. This court will review such an exercise in judicial discretion only for an abuse thereof.

Applying the above rationale to the case at bar, we find no reversible error demonstrated. Since Pound was the only eyewitness to the collision and since he had previously testified both as to his experience as an operator of motor vehicles and to the facts forming the basis of his statement, we are not inclined to hold that admission of his inference concerning the unavoidability of the accident based upon his perception of the totality of the circumstances was an abuse of judicial discretion.

## V.

Under its fifth assignment of error Rieth-Riley maintains that it was reversible error to permit McCarrell's attorney to conduct *voir dire* examinations of prospective jurors which informed them of the various legal theories and principles involved in the case.

The record reveals that during *voir dire* examinations of prospective jurors, both parties herein presented their respective legal theories of liability and defense. Of particular importance under this issue, according to Rieth-Riley, is the action of the trial court which (1) permitted McCarrell to indoctrinate the prospective jurors on the theory of strict liability, (2) permitted McCarrell to withdraw that theory of liability, and (3) sent the jurors to deliberation without instructing them that McCarrell had withdrawn this theory and that they were not to consider it in their deliberations.

Concerning the assertion of error in presenting the various legal theories to prospective jurors on *voir dire* we note the

recent Indiana Supreme Court decision in *Robinson* v. *State* (1973), 260 Ind. 517, 297 N.E.2d 409, wherein the court stated:

"We are aware of the practice, one of long standing in our courts, of lawyers trying their cases by their *voir dire* examination of the jury. It is so engrained in our state as to have become accepted as tactically proper and necessary. In no sense, however, does it coincide with fair trial standards, among the objects of which are to provide an impartial and unbiased jury capable of understanding in intelligently assessing the evidence. Much time and energy are consumed in interrogating not with a view towards culling prospective jurors because of bias or prejudice but to the end that bias and prejudice may be utilized to advantage and prospective jurors cultivated and conditioned, both consciously and subconsciously, to be receptive to the cause of the examiner. Many excellent lawyers genuinely believe that their case has been determined by the time the jury has been sworn, and they may well be correct. We think this practice is repugnant to the cause of justice and should terminate. We think also that this can be best accomplished by the trial judge's assumption of a more active role in the *voir dire* proceedings and by exercising, rather than abdicating, his broad discretionary power to restrict interrogation to that which is pertinent and proper for testing the capacity and competence of the jurors.

" '* * * It has been said that the ultimate function of *voir dire* is to explore the nuances of conscience to determine whether a prospective juror is able to participate fairly in the deliberations on the issue of guilt, confining his judgment to the facts as presented, and that the overall purpose of *voir dire* examination of jurors is to determine the real state of their minds so that a fair and impartial jury can be chosen. 47 Am. Jur. 2d 786, Jury, § 195.

" 'The extent to which a party may examine a prospective juror touching his qualifications to serve is not governed by fixed rules, but rests largely in the discretion of the trial court.' 17 I.L.E. 612, Jury § 110, and cases there cited. It has been held to be improper to examine jurors as to how they would act or decide in certain contingencies or in case certain evidence should be developed on the trial. 17 I.L.E. 614, Jury, § 110, and cases there cited."

Thus, as Rieth-Riley suggests, the conducting of *voir dire* as done in the case at bar is cause for reversal. However, in order to properly raise the question of improper *voir dire* examination, it is incumbent upon the complaining party to properly object. As the *Robinson* court stated:

"We think that the aforementioned interrogation was improper and highly prejudicial. Properly raised and presented, it would have warranted reversal of Defendant's conviction. To preserve such error, however, Defendant should have moved for a mistrial at the conclusion of the state's case in chief, because it was within the context of the evidence presented that the propriety of the interrogation and the probability of harm therefrom had to be made."

Inasmuch as Rieth-Riley first presents its assertion of impropriety in its motion to correct errors, reversible error, if any, must be deemed to have been waived.

Concerning appellant's argument on the failure to instruct the jury to disregard strict liability, we note that the record fails to reveal that Rieth-Riley either (1) requested such an instruction or (2) objected to the trial court's failure to give one. According to the authorities, this also amounts to waiver:

"Where the court fails to give instructions relevant and proper for consideration by the jury under issues submitted for trial, such omission on the part of the court must be called to its attention before the jury retires to consider of its verdict, so that the court may supply the omission, and then, if there be a failure to instruct as to the omitted element, an exception should be reserved. The failure in the instant case to request of the court that it instruct the jury on assumption of risk operates as a waiver of any objection of such omission to do so. It is too late to make the objection for the first time on appeal. See *Dorsey* v. *State* (1913), 179 Ind. 531, 536, 100 N.E. 369; *Marks* v. *Jacobs* (1881), 76 Ind. 216, 218; *Murray* v. *State* (1866), 26 Ind. 141, 142." *Piepho* v. *Gesse* (1939), 106 Ind. App. 450, 18 N.E.2d 468.

Or, as stated as early as the case of *Krack* v. *Wolf* (1872), 39 Ind. 88:

"It would hardly conduce to the fair and proper administration of justice to allow a party to take his chances for a verdict, and then, if he was unsuccessful, to claim there should be a new trial because the court had not instructed the jury, when he neither asked it nor excepted to its not having been done."

## VI.

Finally, Rieth-Riley argues that the jury verdict was not supported by sufficient evidence. Specifically, it is urged that there was no evidence presented from which the jury could have found negligence on the part of Rieth-Riley.

In determining whether the jury verdict is supported by sufficient evidence, it is a well settled proposition that this court neither weighs the evidence nor resolves questions of credibility of witnesses. Rather, we view only the evidence most favorable to appellee, together with all logical inferences flowing therefrom. If, from that viewpoint, there is substantial evidence of probative value to establish each material element of the cause of action, the verdict will not be disturbed. *Berkebile* v. *Barnett* (1974), 159 Ind. App. 491, 307 N.E.2d 490.

The elements of negligence are:

(1) a duty on the part of the defendant in relation to the plaintiff;

(2) failure of the defendant to conform his conduct to the requisite standard of care required by the relationship; and

(3) an injury to plaintiff resulting from that failure. *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701.

Rieth-Riley had a duty to exercise reasonable care so as not to endanger the safety of motorists such as McCarrell who were lawfully traveling on State Road #3 while that road was being widened by Rieth-Riley. Nevertheless, the record reveals that Rieth-Riley attempted to transport an old gas main 260 feet in length by dragging the same with a backhoe. The pipe was six inches in diameter, warped, and being dragged within 15-20 feet of the traveled portion of the road. In our opinion, this is substantial evidence of probative value from

which the jury could have reasonably inferred that Rieth-Riley did not conform its conduct to the requisite standard of care required by the relationship between the parties. Moreover, the record is replete with evidence concerning the nature and extent of injuries proximately resulting to McCarrell from the breach of the standard of care by Rieth-Riley. We are therefore compelled to conclude that there was sufficient evidence to support the jury verdict in favor of McCarrell.

There being no reversible error demonstrated, judgment is affirmed.

Affirmed.

Robertson, C.J., and Lowdermilk, J., concur.