**Art CARROLL, Appellant (Plaintiff Below),**

v.

**William LORDY, Appellee (Defendant Below),**

v.

**Edwin J. SIMCOX, Appellee (Cross-Defendant Below).**

**No. 4–581A13.**

Court of Appeals of Indiana, Fourth District.

Jan. 20, 1982.

Thomas L. Hulse, Al S. Woolbert, Woolbert, Cunningham & Hulse, Anderson, for appellant.

Fred G. Yelton, Jr., Anderson, for appellee.

CONOVER, Judge.

## STATEMENT OF THE CASE

Appellant Art Carroll filed a complaint in the Madison Superior Court, Division 1, charging William Lordy with violations of Carroll's registered trademark "elephant ears." The complaint asked for a temporary restraining order, injunctive relief and damages. A restraining order was granted on July 3, 1979, and notice was given of a hearing to be held on July 11, 1979. At that hearing Lordy was found to be in violation of the restraining order. The case was continued to permit Lordy to retain counsel. Lordy's motion to dissolve the restraining order was granted on December 7, 1979.

Lordy filed a motion to join the Indiana Secretary of State as a third party defendant. This motion was granted and Lordy cross-complained against the Secretary of State asking that the term "elephant ears" be declared a generic term and its registration cancelled. Lordy answered Carroll's complaint and filed a counterclaim on December 14, 1979. The counterclaim alleged that Carroll intentionally and maliciously sought and obtained a restraining order without notice against him without complying with the requirements of Trial Rule 65. Lordy asked for compensatory and punitive damages.

Lordy filed a motion for summary judgment on June 17, 1980, upon the complaint, cross-complaint and counterclaim. On July 25, 1980, the court granted the motion for summary judgment upon the complaint and cross-complaint and entered a default judgment upon the counterclaim against Carroll for not making a responsive pleading. The summary judgment held there was no material issue of fact, the previous determination of the United States Commissioner of Patents and Trademarks declaring "elephant ears" to be a generic term was res judicata, and that "elephant ears" was a generic term under the laws of Indiana. The court ordered cancellation of the Indiana trademark registration and set a trial date on the issue of damages. Trial was held on November 14, 1980, and judgment entered on December 12, 1980, awarding Lordy actual and punitive damages. Carroll timely filed his motion to correct errors which was overruled and now takes this appeal.

We affirm in part, reverse in part and remand.

## ISSUES PRESENTED FOR REVIEW

1. Did the trial court err in granting Lordy's motion for summary judgment?

2. Was there error in entry of the default judgment?

3. Were punitive damages improperly awarded?

4. Was Carroll's motion to correct errors timely filed?

Both appellant Carroll and appellee Lordy are engaged in the business of selling a pastry known as elephant ears. Like many other itinerant vendors, Carroll and Lordy travel the fair circuit vending their goods to patrons of these fairs. It was during the Anderson Free Fair in 1979 that Carroll filed a complaint against Lordy for using his registered Indiana trademark "elephant ears" to identify Lordy's products.

Lordy was served with a temporary restraining order prohibiting him from using the term "elephant ears" to describe his pastry. Lordy changed the name on his signs to "Monster Ears." Although other vendors at the Anderson fair were selling under the name "elephant ears" Lordy was

the only one upon whom a restraining order was sought.

The evidence shows that "elephant ears" first became the subject of Indiana trademark registration in August, 1972. The trademark was registered to Larry and Karn Bosley who assigned the trademark to Carroll in October 1973.

After changing his signs Lordy testified that his business declined sharply. After leaving the Anderson Fair Lordy changed his signs back to "elephant ears" even though the restraining order was issued statewide. Lordy also testified he was forced to abandon his planned Indiana fair schedule and take fair dates in other states where elephant ears are less popular.[1] As a result of the changed schedule Lordy claims he lost thousands of dollars in profits and damage to his advertising signs.

In the affidavits submitted pursuant to their motion for summary judgment Mr. and Mrs. Lordy both stated they had been familiar with the term "elephant ears" used to describe a pastry product since 1965. They also stated they had observed at least ten other "elephant ear" concessions at the Anderson fair in addition to Lordy and Carroll.

A third affidavit was submitted by John Libbert, a member of the Board of Directors of the Outdoor Amusement Business Association, Inc. In his affidavit Libbert asserted that he had been familiar with a fried pastry product known as elephant ears since the late 1960's. Libbert and the Lordy's all stated they believed the term "elephant ears" to be generic. Attached to Libbert's affidavit were numerous exhibits supporting his sworn statements. These exhibits were comprised of letters, pictures and excerpts from newspapers. These affidavits and exhibits formed the basis for the ruling that "elephant ears" was a generic term. Libbert's exhibits also contained material relating to a previous ruling by the Commissioner of Patents and Trademarks holding that "elephant ears" was incapable of federal registration as a generic term. This is apparently the material that supported the court's ruling that the finding of the Commissioner of Patents and Trademarks was res judicata.

After the entry of summary judgment and default judgment trial was held on the issue of damages. Lordy was awarded $2,750.00 actual damages and $4,250.00 punitive damages.

## I. SUMMARY JUDGMENT

Carroll makes several arguments concerning the propriety of entering summary judgment. They will be treated in turn.

### A. Material Issue of Fact

When a motion for summary judgment is made it is the duty of the moving party to show that no material issue of fact remains in dispute. Ind.Rules of Procedure, Trial Rule 56. When reviewing a grant of summary judgment we must determine if the movant has shown the absence of a material issue of fact and if the law was correctly applied by the trial court. *Lynch v. Indiana State University Board of Trustees*, (1978) Ind.App., 378 N.E.2d 900, 902. Any doubts are resolved against the movant. *Barr v. State*, (1980) Ind.App., 400 N.E.2d 1149, 1150. Although Carroll did not oppose the motion for summary judgment this does not entitle Lordy to an automatic summary judgment. The moving party still bears the burden of showing the propriety of summary judgment. T.R. 56(C); *Levy Co., Inc. v. State Board of Tax Commissioners*, (1977) 173 Ind.App. 667, 365 N.E.2d 796, 798; *Tekulve v. Turner*, (1979) Ind.App., 391 N.E.2d 673.

Carroll contends the affidavits of the Lordys and Libbert do not demonstrate a lack of any material issue of fact. A fact is "material for purposes of summary judgment if it facilitates resolution of any of the issues involved." *Carrow v. Streeter*, (1980) Ind.App., 410 N.E.2d 1369. The factual issue resolved by the summary judgment was the genericness of the term "elephant ears." Therefore we must look to the affidavits submitted to determine if

---

1. Indiana, it appears, is the leading market for elephant ears.

they settle the question of the generic use of the term elephant ears.

■ The affidavits consistently testify that "elephant ears" is used in a descriptive manner to describe a deep fried pastry and has been used in that manner since 1965. The exhibits attached to Libbert's affidavits present an overwhelming and uncontradicted witness to the use of "elephant ears" as a generic term. Nothing in the record opposes the evidence and we are forced to conclude the factual issue was not in dispute after the submission of the affidavits, all that remained for the court to do was to apply the law to the facts.

### B. Affidavits

Carroll makes two related arguments concerning the affidavits submitted with the motion for summary judgment. He challenges the affidavits as containing inadmissible conclusions and opposes certain documents attached to Libbert's affidavit as inadmissible hearsay.

■ Carroll's position is that conclusions or opinions are never admissible in evidence. While this rule was once followed inflexibly by the courts of Indiana, the rule has been modified so substantially that the former rule is now the exception. A trial judge may in an appropriate case, permit opinion testimony on any ultimate fact issue. *State v. Bouras,* (1981) Ind.App., 423 N.E.2d 741, 745. In *Rieth-Riley Construction Co., Inc. v. McCarrell,* (1975) 163 Ind. App. 613, 325 N.E.2d 844, the court, after noting the continual erosion of the rigid exclusionary approach to opinions said,

"Thus the *per se* exclusion rule has been abrogated, and the trial judge at his discretion, may in an appropriate case, permit such evidence. In exercising his discretion, the trial judge should consider the nature of the issue and the offered opinion in light of all attendant circumstances of the particular case. This court will review such an exercise in judicial discretion only for an abuse thereof."

*Id.* 325 N.E.2d at 852–53.

■ An abuse of discretion which would permit a reviewing court to overturn the ruling of the trial court is "an erroneous conclusion and judgment, one clearly against the logic and effect of facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom." *Godfrey v. State,* (1978) Ind.App., 380 N.E.2d 621, 623; *Dunbar v. Dunbar,* (1969) 145 Ind.App. 479, 483, 251 N.E.2d 468, 471.

■ The genericness of a term is an ultimate fact issue. Any given term's proper categorization is a factual issue. *Salton, Inc. v. Cornwall,* (D.N.J.1979) 477 F.Supp. 975. The affiants were competent to form opinions about the term "elephant ears." They have traveled the fair circuit and have had ample opportunity to observe personally the use of "elephant ears." Nothing included in their opinions is "clearly against the logic and effect of facts and circumstances before the court."

Also, the issues are so clearly drawn in most trademark actions that the admission of an opinion carries very little prejudice with it. The following statement from a federal trademark decision describes opinion evidence in trademark cases:

"The opinion of an interested party respecting the ultimate conclusion involved in a proceeding would normally appear of no moment in the proceeding. Moreover, it is known at the outset. One may assume, for example, that an opposer believes confusion likely and that a defending applicant does not. That a party earlier indicated a contrary opinion respecting the conclusion in a similar proceeding involving similar marks and goods is a fact, and that fact may be received in evidence as merely illuminative of shade and tone in the total picture confronting the decision maker."

*Interstate Brands Corp. v. Celestial Seasonings* (Cust. & Pat.App.1978) 576 F.2d 926, 929; rehearing denied August 10, 1978. We do not think the judge committed an abuse of discretion by considering the opinions contained within the affidavits. The opinions contained therein were self-evident and proper subjects of lay opinion.

■ In a trademark action, newspaper articles and advertisements may be considered non-hearsay evidence. The evidence is not offered to prove the truth of the matters asserted therein but is probative of the reaction of the average consumer. "To hold otherwise would be to separate the concept of the average prospective purchaser from the world of reality." *Application of Abcor Development Corp.* (Cust. & Pat.App.1978) 588 F.2d 811, 814. Consideration of the advertising and articles was not error.

■ Carroll also challenges the use of letters attached to the Libbert affidavit. The first letter from an attorney is merely a cover letter attached to the record of the proceedings before the Patent and Trademark Office. This letter is merely collateral and does not carry any probative weight on the matter of genericness. Even if we were to hold that admission of the letter was error it would be harmless because it did nothing to prejudice the rights of Carroll.

■ The other letter challenged by Carroll is clearly inadmissible hearsay. The letter contains a description of elephant ears as well as a multiple hearsay narrative concerning a phone conversation with a baker about elephant ears. This is clearly hearsay of the first rank and inadmissible. However, even when we exclude this letter and the cover letter from the affidavit, the record still contains more than an adequate amount of evidence to support the granting of summary judgment.

### C. Application of the Law [2]

Carroll maintains that Indiana law permits registration of generic terms. The pertinent statutory section reads:

"24-2-1-3 Registerability

"Sec. 3. A trade-mark by which the goods or services of any applicant for registration may be distinguished from the goods or services of others shall not be registered if it

"(e) consists of a mark which, (1) when applied to the goods or services of the applicant, is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods or services of the applicant is primarily geographically descriptive or deceptively misdescriptive of them, or (3) is primarily merely a surname: Provided, however, That nothing in this section (e) shall prevent the registration of a mark used in this state by the applicant which has become distinctive of the applicant's goods or services. The secretary of state may accept as evidence that the mark has become distinctive, as applied to the applicant's goods or services, proof of substantially exclusive and continuous use thereof as a mark by the applicant in this state or elsewhere for the five (5) years next preceding the date of the filing of the application for registration; . . ."

The purpose of a trademark is to identify the source of the product, not the product itself. When a trademark becomes primarily the identifier of a product rather than the source then the trademark has become descriptive of the goods. The following quotation from the Ninth Circuit illustrates the reason for not registering descriptive terms.

"The law is that a word which is in the primary meaning merely descriptive of the goods to which it is applied may not be appropriated as the exclusive trademark of a single seller, since one competitor will not be permitted to impoverish the language of commerce by preventing his fellows from describing their own goods. *Bada Co. v. Montgomery Ward & Co.* (9th Cir. 1970) 426 F.2d 8. Loss of the ability of a trademark to identify the source of goods is called a 'common de-

**2.** Unlike patent and copyright law, the Lanham act does not pre-empt state trademark law. Pre-emption arguments have been expressly rejected by the Third Circuit Court of Appeals, *LaChemise Lacoste v. The Alligator Company, Inc.* (3d Cir. 1974) 506 F.2d 339, 346 and the Ninth Circuit, *Golden Door, Inc. v. Odisho* (9th Cir. 1980) 646 F.2d 347, 352; repudiating contrary dicta in *Mister Donut of America, Inc. v. Mr. Donut, Inc.* (9th Cir. 1969) 418 F.2d 838, 844.

scriptive name of an article or substance' in federal law. 15 U.S.C. 1064(c). Courts have come to equate 'common descriptive name,' with the shorthand expression 'generic term.' *Anti-Monopoly, Inc. v. General Mills Fun Group* (9th Cir. 1979) 611 F.2d 296, 301; *Abercrombie & Fitch Co. v. Hunting World* (2d Cir. 1976) 537 F.2d 4, 9."

■ ·The courts of Indiana have not been forced to interpret the words "merely descriptive" or "generic" since the present trademark statute was enacted. We are convinced the language "merely descriptive" and "generic" speaks of the same concept as the words "generic" and "common descriptive term" do in federal law. That is, once a term is found to express the name of a product rather than the source of the product then that term is incapable of trademark registration.[3] Once registered a trademark registration may be cancelled if the term becomes descriptive. The pertinent Indiana statute states:

"24–2–1–10 Cancellation
    Sec. 10. The secretary of state shall cancel from the register:
    (4) Any registration concerning which a court of competent jurisdiction shall find
    (a) that the registered trade-mark has been abandoned,
    (b) that the registrant is not the owner of the trade-mark,

(c) that the registration was granted improperly,
    (d) that the registration was obtained fraudulently;
    (5) When a court of competent jurisdiction shall order cancellation of a registration on any ground."

This statute grants very broad power to the courts to review trademark registration. This is due to the fact that the trademark statute does not confer any enforcement or review rights on the Secretary of State. Remedies are left to the parties to work out through traditional legal avenues. And as we have noted, the courts have liberal power to adjudicate trademark validity.

We turn to the evidence used by the court to support a ruling that "elephant ears" was a generic term. We are convinced that the ruling was proper. All of the affidavits and materials submitted with the motion for summary judgment speak with a unitary witness. "Elephant ears" describes a fried pastry topped with sweetened cinnamon. These pastries are sold in commercial mixtures as well as prepared items. The demand for "elephant ears" is especially keen in Indiana. There are a number of itinerant vendors who travel the fair circuit selling similar pastries as "elephant ears".[4]

■ The only conclusion that could be drawn from such persuasive evidence is that "elephant ears" is a descriptive term, incapable of trademark registration and

---

**3.** The following list is exemplary of terms which are generic:

Aspirin—*Bayer Co. v. United Drug Co.* (1921 DCNY), 272 F. 505.
Brassiere—*Charles R. DeBevoise Co. v. H. & W. Co.* (1905) 69 N.J.Eq. 114, 60 A. 407.
Escalator—*Haughton Elevator Co. v. Seeberger* (1950 Comm.Pat) 85 U.S. Patent Quarterly 80.
Shredded Wheat—*Kellogg Co. v. National Biscuit Co.*, (1938) 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.
Yo-Yo—*Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.* (1965 7th Cir.) 343 F.2d 655.

**4.** The following recipe was submitted as characteristic of the use of the term "elephant ears" by the consuming public.

    "Several Indiana schools use this recipe for elephant ears sold at school carnivals and fundraisers.

ELEPHANT EARS

1½  cups milk
2    tablespoons sugar
1    teaspoon salt
6    tablespoons shortening
2    packages dry yeast
4    cups flour
     Oil for deep frying
     Sugar mixture (recipe follows)

    Heat together, but do not boil, milk, sugar, salt and shortening until shortening is melted. Cool to lukewarm. Add yeast, stir until dissolved. Stir in flour, two cups at a time, beating after each addition until smooth.

    Put into a greased bowl; cover with a damp cloth and let rise until double, about 30 minutes.

    Heat oil to 350 degrees or hot, but not smoking. Dust hands with flour. Pinch off

should be stricken from the records of the Secretary of State.[5] Having found no error in the finding of the court that "elephant ears" is a generic term, we affirm that portion of the judgment and order the Secretary of State to cancel the registration of "elephant ears."

### D. Res Judicata

We are more amenable to Carroll's argument that the judge misapplied the law when he ruled the finding of the Commissioner of Patents and Trademarks was res judicata on the generic nature of the term "elephant ears."

> "The basic elements of the doctrine of res judicata are: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the matter now in issue was, or might have been, determined in the former suit; 3) the particular controversy adjudicated in the former action must have been between parties to the present suit or their privies; and 4) the judgment in the former suit must have been rendered on the merits."

*Glass v. Continental Assurance Co.*, (1981) Ind.App., 415 N.E.2d 126, 128.

■ When determining identity of parties for res judicata purposes, courts look beyond mere nominal parties and hold estopped only those parties whose interests were directly involved in prior litigation concerning the same subject matter or claim. *Union Insurance Co. v. State ex rel. Indiana Department of Insurance*, (1980) Ind.App., 401 N.E.2d 1372. A "party" is one "who is directly interested in the subject matter and had a right to make defense or to control the proceedings and to appeal from the judgment." *Mayhew v. Deister*, (1969) 144 Ind.App. 111, 244 N.E.2d 448.

■ The action before the examiner in the Patent and Trademark office did not involve Lordy. Carroll's application for Lanham Act[6] registration was opposed by a Mrs. Rohr and Gold Medal Products, Inc. Lordy neither opposed the registration nor was he in privity with those who did. It is fundamental to the rule of res judicata that the party seeking to benefit from the rule must have been a party to the original action or in privity with those who were. *Speedway Realty Co. v. Grasshoff Realty Corp.*, (1965) Ind.App., 206 N.E.2d 632; rev'd on other grounds 248 Ind. 6, 216 N.E.2d 845. While other courts have abandoned the identity of parties requirement, Indiana still retains it as an element of res judicata. *Indiana State Highway Commission v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172, 1176. It was error for the court to hold that the findings of the Commissioner of Patents and Trademarks was res judicata. However, this error does not mandate a reversal as the judge independently found that the term "elephant ears" was a generic term under Indiana law.

### II. DEFAULT JUDGMENT

■ Carroll argues that entry of a default judgment adverse to him was improper because the default was never applied for and he never received written notice of the default. We agree.

> pieces of dough about the size of a golf ball. Stretch each dough ball into a thin 6 to 8-inch circle. Drop stretched dough, one at a time into hot oil. Fry until it rises to the surface, turn and fry other side until light golden brown.
>
> Remove with a slotted spoon; drain on absorbent paper. Sprinkle generously with sugar mixture.
>
> SUGAR MIXTURE: Mix ½ cup sugar with 1 teaspoon cinnamon."

**5.** Carroll's trademark was used in connection with the following cartoon figure. Our decision relates only to the use of the words "elephant ears." We express no opinion as to the possibility of Carroll gaining some commercial protection for the cartoon elephant.

**6.** 15 U.S.C. 1050 et seq.

Our trial rule 55 is specific and narrowly drawn respecting default judgments.[7] The party seeking a default judgment must apply for it. Written notice must also be served upon the defaulting party. The record submitted on appeal does not show that Lordy every made application for default or that Carroll received written notice of an application for default judgment. The first mention of a default judgment is in the last paragraph of the summary judgment order where it states:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the court that the issue of damages presented by the counterclaim of William Lordy against Art Carroll be and the same is hereby continued and set for hearing at 1:30 P.M., August 8, 1980, the court noting at this time that the Plaintiff, Art Carroll, having failed to file a responsive pleading to the counterclaim of William Lordy, said Defendant and Counterclaimant, William Lordy, is now entitled to the default of the Plaintiff, Art Carroll."

Lordy reasons that since a trial on the issue of damages was held and attended by Carroll it is self-evident that Lordy applied for a default judgment and served written notice. We cannot accept such reasoning. In effect, the Appellee is asking this court to treat the important matters of notice and application for default as if they were mere surplusage in T.R. 55. Strict adherence to the language of T.R. 55 is required. In *Hiatt v. Yergin*, (1972) 152 Ind.App. 497, 498, 284 N.E.2d 834, 841, the court said, "even if a party has failed to plead or otherwise comply with the rules, no default judgment is proper against such a party until an application for a default is filed ...."[8] Omission of the application for or written notice of default is reversible error. The entry of a default judgment against Carroll must be reversed.

### III. DAMAGES

Since the damages were awarded pursuant to the defaulted counterclaim which was previously set aside, no valid judgment is left to support the award of damages. Therefore, the award of damages, both compensatory and punitive, must be reversed.

### IV. MOTION TO CORRECT ERRORS

Lordy contends that Carroll's appeal is inappropriate because the motion to correct errors was filed beyond the 60 day limit permitted by Trial Rule 59. Lordy's calendar begins running on July 25, 1980, the date the default and summary judgments were entered. The last day on which the motion to correct errors could be filed was September 23, 1980. Since the motion to correct errors was not filed until February 3, 1981, 199 days after the entry of summary judgment, Lordy claims we should not entertain this appeal.

Ind.Rules of Procedure, Trial Rule 56(C) states:

"A summary judgment may be rendered upon less than all the issues or claims, including without limitation the issue of liability or damages alone although there is a genuine issue as to damages or liability as the case may be. A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing

---

**7.** Ind.Rules of Procedure; Trial Rule 55(B):

"**Default judgment.** In all cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against a person known to be an infant or incompetent unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by a representative, his representative) shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required."

**8.** One exception to the notice rules of 55 is extant.

When the defaulting party has not appeared in the action or where the appearance of counsel has been withdrawn, a default judgment may be entered without notice of a hearing. *Stewart v. Hicks*, (1979) Ind.App., 395 N.E.2d 308, 309, 312.

expressly determines that there is not just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties."

 Before a motion to correct errors becomes appropriate there must be a final judgment or an appealable final order entered. This is for the benefit of the court. Delaying the appeal process until judgment is final obviates the problem of having to deal with an appeal in a piecemeal fashion. Since the court did not express in writing that there was no just reason for delay, we cannot hold that the judgment of July 25, 1980, was a final judgment within the meaning of T.R. 59(C). *Federal Insurance Co. v. Liberty Mutual Insurance Co.*, (1974) 162 Ind.App. 242, 319 N.E.2d 171, 173. Having found that summary judgment was appropriate and default judgment improperly entered, we affirm the decision of the court finding "elephant ears" to be a generic or descriptive mark and incapable of registration under Indiana trademark law. As to the default judgment we reverse and remand for further proceedings consistent with this opinion.

MILLER, P. J., and YOUNG, J., concur.