**Jimmie Hayes OLLIS, and Underwood and Weld Company, Inc., Appellants–Defendants,**

**v.**

**Edward KNECHT, as the administrator of the estate of Cynthia M. Knecht, deceased, Appellee–Plaintiff.**

No. 16A05–0011–CV–00492.

Court of Appeals of Indiana.

July 20, 2001.

Rehearing Denied September 4, 2001.

Cynthia's estate ("Knecht") and filed a wrongful death suit against Appellants. Appellants admitted liability, and the case proceeded to trial on the issue of damages only. The jury awarded $2,800,000.00 to Knecht. Appellants filed a motion to correct errors, claiming that the trial court erred in excluding the testimony of Appellants' expert witness and that the jury's verdict was excessive. The trial court denied Appellants' motion to correct errors.

William Deer, McTurnan & Deer, Indianapolis, IN, Attorney for Appellants.

J. Lee McNeely, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Jimmie Hayes Ollis and Underwood and Weld Company, Inc. (collectively, "Appellants") appeal from the trial court's denial of their motion to correct errors. Appellants raise two issues, which we restate as:

1. whether the trial court abused its discretion when it denied Appellants' motion to correct errors, which alleged that the trial court abused its discretion when it excluded the testimony of Appellants' expert witness; and

2. whether the trial court abused its discretion when it refused to give to the jury a portion of Appellants' tendered instruction on witness credibility.

We affirm.

The relevant facts follow. Cynthia M. Knecht died in an automobile accident on July 28, 1999. Edward Knecht, Cynthia's widower, was named administrator of

### I.

The first issue is whether the trial court abused its discretion when it denied Appellants' motion to correct errors, which alleged that the trial court abused its discretion when it excluded the testimony of Appellants' expert witness. In their motion, Appellants requested that the trial court order a new trial. A trial court has broad discretion to grant or deny a motion requesting a new trial. *Barnard v. Himes,* 719 N.E.2d 862, 865 (Ind.Ct.App. 1999), *trans. denied.* We review the trial court's decision for an abuse of discretion. *Id.* An abuse of discretion has occurred if the trial court's decision is against the logic and effect of the facts and circumstances or the reasonable inferences therefrom or if the trial court's decision is "without reason or ... based upon impermissible reasons or considerations." *DeVittorio v. Werker Bros., Inc.,* 634 N.E.2d 528, 530 (Ind.Ct.App.1994).

Appellants claim that they were entitled to a new trial because the trial court abused its discretion when it excluded the testimony of Appellants' expert witness. Appellants' expert, Dr. Terrance Parks, was prepared to testify regarding the loss of income caused by Cynthia's death. Knecht moved to exclude the testimony of Dr. Parks, and the trial court held a hearing on Knecht's motion. Subsequently,

the trial court granted Knecht's motion, providing in pertinent part:

6. After considering both the scope and content of Dr. Parks' proposed testimony and the assumptions and basis upon which Dr. Parks' proposed testimony would rest, as well as the arguments of both plaintiff's and defendants' counsel, and after due consideration, this Court FINDS that the proposed testimony to be offered by Terrance Parks, Ph.D. should be and is excluded from this cause under the standards set forth in Indiana Evidence Rule 403 and Indiana Evidence Rule 702.

Record, pp. 123. Because the trial court judge excluded Dr. Parks's testimony based on both Ind. Evidence Rule 702 and Ind. Evidence Rule 403, we will review the exclusion on each of those grounds individually.

### A.

■ Ind. Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

A trial court judge has broad discretion to admit or exclude the testimony of an expert witness under Ind. Evidence Rule 702. *Hottinger v. Trugreen Corp.*, 665 N.E.2d 593, 596 (Ind.Ct.App.1996), *trans. denied.* We will not disturb that decision unless the trial court's decision was manifestly erroneous. *Id.*

Regarding Ind. Evidence Rule 702, the trial court judge specifically found:

8. In further support of this finding, the Court FINDS that the proposed testimony of Terrance Parks is inadmissible under Indiana Evidence Rule 702 for the reason that the Court is not persuaded, based upon the scope of the evidence submitted in this hearing, that the proposed testimony is based upon economic principles which are either sufficiently reliable or scientifically supportable.

9. The Court further FINDS that, based upon the evidence submitted in this hearing, that there is insufficient support for the proposition that the proposed testimony of the witness is based upon sound or valid economic principles and methodologies which have been sufficiently or adequately examined, published, tested, peer reviewed and/or accepted within the economic community, thus making the proposed testimony excludable under the standards set forth in Indiana Rule of Evidence 702.

Record, pp. 123–124. These findings indicate that the trial court excluded Dr. Parks's testimony under section (b) of Ind. Evidence Rule 702.

Appellants first argue that the trial court abused its discretion when it excluded Dr. Parks's testimony under Ind. Evidence Rule 702(b) because economics is not a science. Appellants contend that economics is a social science and that social sciences are not subject to an analysis under Ind. Evidence Rule 702(b). We disagree.

■ Economics is "the science that deals with the production, distribution, and consumption of wealth, and with the various related problems of labor, finance, taxation, etc." WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH, 430 (3d college ed.1988). Contrary to Appellants' argument, whether a field of study is, or is not,

a science is not determined by where a discipline is listed in a "typical college catalog." Appellants' reply brief, p. 6. Disciplines that are sciences employ the scientific method: "[t]he totality of principles and processes regarded as characteristic of or necessary for scientific investigation, generally taken to include rules for concept formation, conduct of observations and experiments, and validation of hypotheses by observations or experiments." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 1163 (10th ed.1981). Consequently, social sciences like economics and psychology, which employ the scientific method, are sciences, and experts from those fields should be prepared to have their opinions and theories subjected to an analysis under Ind. Evidence Rule 702(b). *See, e.g., Doe v. Shults–Lewis Child & Family Servs., Inc.,* 718 N.E.2d 738, 748–751 (Ind.1999) (discussing the admissibility of psychologist's testimony regarding repressed memories); *Time Warner Entm't. Co., L.P. v. Whiteman,* 741 N.E.2d 1265, 1273–1275 (Ind.Ct.App.2001) (discussing the admissibility of accountant's expert testimony).

■ Next, Appellants argue that even if Ind. Evidence Rule 702(b) applies, the trial court improperly excluded Dr. Parks's testimony because it met the requirements of Ind. Evidence Rule 702(b). Specifically, Appellants contend that the trial court abused its discretion because (1) case law establishes that Dr. Parks's discount rates are appropriate; (2) Dr. Parks's methodology has been published; and (3) Dr. Parks's methodology is generally accepted by economists.

■ When determining whether scientific evidence is admissible under Ind. Evidence Rule 702(b), courts consider the factors discussed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

*See Hottinger,* 665 N.E.2d at 596. In *Daubert,* the Supreme Court held that for scientific knowledge to be admissible under Federal Evidence Rule 702, the trial court judge must determine that the evidence is based on reliable scientific methodology. *Id.* at 592–593, 113 S.Ct. at 2796. To assist trial courts in making this determination, the Supreme Court outlined a non-exclusive list of factors that may be considered: whether the theory or technique can be or has been tested, whether the theory has been subjected to peer review and publication, whether there is a known or potential error rate, and whether the theory has been generally accepted within the relevant field of study. *Id.* at 593–595, 113 S.Ct. at 2796–2798. Publication in a peer-reviewed journal, while relevant, is not to be dispositive of the issue of scientific validity. *Id.* at 594, 113 S.Ct. at 2797. The focus of the admissibility test must remain on the methodology of the theory or technique, not on the conclusions generated. *Id.* at 595, 113 S.Ct. at 2797.

■ When discussing the application of Ind. Evidence Rule 702(b), the Indiana Supreme Court has held that:

> The concerns driving *Daubert* coincide with the express requirement of Indiana Rule of Evidence 702(b) that the trial court be satisfied of the reliability of the scientific principles involved. Thus, although not binding upon the determination of the state evidentiary law issues, the federal evidence law of *Daubert* and its progeny is helpful to the bench and bar in applying Indiana Rule of Evidence 702(b).

*Steward v. State,* 652 N.E.2d 490, 498 (Ind. 1995), *reh'g denied.* Consequently, we consider the factors enunciated in *Daubert* when deciding whether the trial court erred in refusing to admit Dr. Parks's testimony. Furthermore, we note that the party wishing to admit the expert's testi-

mony has the burden of proving that the evidence is admissible. *Hagerman Const., Inc. v. Copeland,* 697 N.E.2d 948, 957 (Ind. Ct.App.1998), *opinion amended on reh'g, trans. denied,* 714 N.E.2d 171.

Dr. Parks was prepared to testify regarding the Knechts' loss of income caused by Cynthia's death. When an economist estimates the loss of income caused by a person's untimely death or injury, he must estimate how much the decedent's income would have grown over the years remaining until she was statistically likely to have retired or to have died. *See* HENRY N. BUTLER, ECONOMIC ANALYSIS FOR LAWYERS 188–208 (1998). Then the economist must discount that income to its present value. *Id.* There are a number of methods available for determining the growth rate applied to predict what the decedent's income would have been in the future and for determining the discount rate applied to reduce that future income to its present value. *See id.* The method that Dr. Parks selected for determining the growth rate and the discount rate was the "mirror image approach," by which, according to Dr. Parks, the economist looks back in time the same number of years that he intends to predict forward in time. For example, in this case, Dr. Parks was predicting how much income Cynthia lost by being unable to work during the fourteen years following her death and what the present value of that income is by using the inflation rate and interest rate that existed over the fourteen years preceding Cynthia's death.

At the 702(b) hearing, Dr. Parks was unable to name a peer-reviewed publication that supported the use of the mirror image approach. Dr. Parks referenced a book by Gerald Martin dealing with the determination of economic damages, which Dr. Parks claimed supported the use of the mirror image approach. However, it is not clear from the Record that either Dr. Parks or Appellants provided the trial court with a full citation for this book or with copies of relevant sections of the book that supported the use of the mirror image approach.

Dr. Parks also testified that the mirror image approach is generally accepted within the field of economics and that he has used the approach many times when he testified in the past. However, Dr. Parks did not provide any citation to authority to support his assertion that the mirror image approach is generally accepted. Consequently, the trial court judge did not have to believe Dr. Parks's bald assertion. In addition, the trial court did not have to admit the evidence simply because Dr. Parks had been allowed to testify previously. *See, e.g., Indiana Michigan Power Co. v. Runge,* 717 N.E.2d 216, 236–237 (Ind.Ct. App.1999) (holding that "allowing a self-professed expert to base his opinions merely upon his 'years of experience' would be 'inconsistent with the clear intent of [Ind. Evidence Rule 702] that scientific experts demonstrate their testimony is based on reliable scientific principles.'"), *reh'g denied.*

In the appellate briefs, Appellants cite case law and academic publications to support the admissibility of Dr. Parks's testimony. However, a review of the record reveals no evidence that Appellants submitted these authorities to the trial court. Our holding today is not that the mirror image approach lacks the scientific validity required to be admissible under Ind. Evidence Rule 702(b). Rather, we hold that the trial court did not abuse its discretion when it excluded the testimony of Dr. Parks under Ind. Evidence Rule 702(b) because Appellants failed to carry their burden of proving to the trial court the scientific reliability underlying the methodology employed by Dr. Parks. *See, e.g.,*

*id.* at 471–473. Consequently, the trial court did not abuse its discretion in denying Appellants' motion to correct errors.

### B.

Ind. Evidence Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." As with other decisions about whether to admit or exclude evidence, trial courts are given broad discretion in applying Ind. Evidence Rule 403. *Sears Roebuck & Co. v. Manuilov,* 742 N.E.2d 453, 457 (Ind.2001). We will reverse the trial court's decision only if that discretion was abused. *Id.* On review, we presume that the trial court's decision was correct, and the party challenging the decision has the burden of persuading us that the trial court abused its discretion. *Id.*

Regarding Ind. Evidence Rule 403, the trial court judge specifically found:

> 7. In support of this finding, the Court FINDS that both the incomplete analysis performed by Dr. Parks in projecting the total loss of earning capacity by Cynthia M. Knecht, as well as the lack of reliable or scientifically established principles upon which his opinions would be based, create a risk of jury confusion that substantially outweighs the probative value of the proposed testimony, thus making the proposed testimony inadmissible under Indiana Evidence Rule 403.

Record, p. 123.

■ We held above that the trial court did not abuse its discretion when it decided that the evidence at the 702(b) hearing did not demonstrate that Dr. Parks's testimony was based on reliable scientific methodology. *See supra* Part I.A. Because Dr. Parks's testimony was not demonstrated to be scientifically valid, we do not know if the testimony had high probative value or no probative value. Introduction of evidence with an unknown probative value regarding the only issue to be decided by the jury could be prejudicial to the opposing party and could cause confusion amongst the jury by giving them extraneous information to consider. *See, e.g., Daubert,* 509 U.S. at 597, 113 S.Ct. at 2798 ("The scientific project is advanced by broad and wide-ranging consideration of a multitude of hypotheses, for those that are incorrect will eventually be shown to be so.... Conjectures that are probably wrong are of little use, however, in the project of reaching a quick, final, and binding legal judgment...."). Consequently, to the extent that the trial court's decision to exclude Dr. Parks's testimony under Evidence Rule 403 rested on the fact that the evidence did not demonstrate that Dr. Parks's opinions were based on reliable or scientifically established principles, we affirm the trial court's conclusion.

However, to the extent that the trial court's decision was based on the fact that Dr. Parks's evaluation of Cynthia's loss of income was "incomplete," we disagree with the trial court's conclusion. Record, p. 123. The testimony provided by Dr. Parks at the hearing revealed that Dr. Parks's analysis estimated the economic loss caused by Cynthia's inability to work at Knecht Interiors. His analysis did not estimate the loss caused by Cynthia's inability to work at the family real estate business or her inability to perform household services. Upon questioning, Dr. Parks agreed that to reach "a complete and total economic analysis ... of the total economic loss suffered by" the Knechts, the economic analysis would have to include the value lost from household services. Knecht and the trial court seem to have determined that Dr. Parks's analysis was "incomplete" because Dr. Parks was

analyzing only one facet of the Knechts' economic loss. Record, p. 123.

However, a defendant is not required to challenge all of a plaintiff's claims for damages. *See, e.g., Sherman v. Kluba,* 734 N.E.2d 701, 704–705 (Ind.Ct. App.2000) (involving a case wherein plaintiff's claim for medical expenses was undisputed, but the plaintiff's claims for lost wages and pain and suffering were disputed by the defendant), *trans. denied.* According to the cover sheet on Dr. Parks's report, he was attempting to assess only the "Lost Earning Capacity of Cynthia M. Knecht." Appellee's appendix, p. 81. Dr. Parks clarified at the hearing that he was assessing only the economic loss caused by Cynthia's inability to work at Knecht Interiors. If Appellants did not wish to challenge Knecht's expert's estimate of the economic loss caused by Cynthia's inability to work at the family real estate business or to perform household services, Appellants were not required to do so. Moreover, Appellants' expert was not required to examine all three of those forms of damages in order to present an estimate of one of those forms of damages. Nevertheless, this error by the trial court does not prevent us from affirming the trial court's decision because the testimony was appropriately excluded on other grounds as discussed above. *See, e.g., Lytle v. Ford Motor Co.,* 696 N.E.2d 465, 471 n. 6 (1998).

## II.

The second issue is whether the trial court abused its discretion when it refused to give to the jury a portion of Appellants' tendered instruction on witness credibility.[1] Because the trial court has broad discretion in instructing the jury, we review the trial court's refusal to give a tendered instruction for an abuse of discretion. *CSX Transp., Inc. v. Kirby,* 687 N.E.2d 611, 616 (Ind.Ct.App.1997), *trans. denied.* Our standard for determining whether the trial court abused its discretion in refusing to give a tendered instruction is to determine: "(1) whether the tendered instruction correctly states the law, (2) whether the evidence at trial supports the giving of the instruction, and (3) whether the substance of the tendered instruction is covered by other instructions given." *Peak v. Campbell,* 578 N.E.2d 360, 361 (Ind.1991). If these three requirements are met, then the trial court should have given the tendered instruction; however, we will not reverse for the trial court's failure to give the instruction unless the complaining party can also show a reasonable probability that her or his substantial rights were adversely affected by the trial court's error. *Id.* at 362.

Here, Appellants tendered the following final jury instruction:

You are instructed that you are not obliged to accept testimony, even though the testimony is uncontradicted and the witness is not impeached. You may decide because of the witness's bearing and demeanor, or for other reasons sufficient to you, that such testimony is not worthy of belief.

If you find that a witness deliberately gave false testimony on a material issue

---

1. Knecht claims that Appellants waived this argument by failing to object to the trial court's modification of the instruction and by failing to set forth verbatim any objections in the appellant's brief. *See* Indiana Trial Rule 51(C) and Ind.App. R. 46(A)(8)(c). However, to preserve error for appeal arising out of a tendered instruction, a party is not required to object to the refusal to give its own properly tendered instruction. *Carroll v. Statesman Ins. Co.,* 493 N.E.2d 1289, 1294 (1986), *reh'g denied, expressly adopted and incorporated in part by Carroll v. Statesman Ins. Co.,* 509 N.E.2d 825, 827 (Ind.1987). Consequently, Appellants did not waive this issue, and we address it on its merits.

in this case then you may disregard all of such witness's testimony which is not corroborated by other credible evidence.

Record, p. 107. The trial court judge gave the first paragraph of the instruction, but did not give the second paragraph of the instruction.

The second paragraph of Appellants' tendered instruction is based on the doctrine of *"falsus in uno, falsus in omnibus."* [2] *Rieth–Riley Constr. Co., Inc. v. McCarrell,* 163 Ind.App. 613, 325 N.E.2d 844, 850 (1975), *reh'g denied.* We have previously stated that a similar instruction was a correct statement of the law in Indiana. *See Hooper v. Preuss,* 109 Ind. App. 638, 642, 37 N.E.2d 687, 689 (Ind.Ct. App.1941). Therefore, we must consider whether the evidence presented at trial supported the giving of the tendered paragraph and whether the other instructions given covered the substance of the tendered paragraph.

Appellants claim that the evidence at trial supported giving the instruction because Carey Knecht, Cynthia's daughter, and Edward Knecht, Cynthia's husband, gave "contradictory testimony" regarding whether Edward and Cynthia "had cut off [Carey's] financial support." Appellants' brief, p. 16. When Edward was asked whether, on a few occasions before Cynthia's death, Edward and Cynthia had "cut off financial support for uh, Carey[,]" he testified, "Not really cut off financial support, I wouldn't say that, no." Record, p. 450. When Carey was testifying, the following interaction occurred:

Q. Um. From time to time, during your adulthood, have your parents been angry with you?

A. Yeah.

Q. And, uh, from, have they, on at least one occasion, cut off your financial support?

A. Um, yeah, there have been times that, yeah, maybe once I got home I, we've like maybe had a rift and I'd end up staying with friends and they'd cut off my spending money and we'd camp out for maybe about a week or so but they've never really, you know, I've always had my home that I could stay at and they never really

Q. And uh, that happened in May of this last year?

A. Yeah, I think, yeah right.

Record, p. 409. We disagree with Appellants' assertion that these two pieces of testimony are necessarily contradictory and necessarily imply that one of the witnesses lied about a material issue at trial. Carey testified that once her parents had cut off her spending money and that she had stayed with a friend for a week, but that she "always had [her] home" where she could stay with her parents. Record, p. 409. This testimony does not contradict Edward's statement that they had never "really cut off financial support" because refusing to give spending money to a child is not equivalent to refusing to provide food or shelter for a child. Thus, the evidence does not support giving the tendered paragraph because there was no contradicting testimony.

In addition, the trial court judge gave the first paragraph of Appellants' tendered instruction and gave the following instruction to the jury:

You are the exclusive judges of the evidence, the credibility of the witnesses, and of the weight to be given to the

---

**2.** The literal translation from Latin name is "false in one thing, false in everything."

BLACK'S LAW DICTIONARY 603 (6th ed.1990).

testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias, or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all the evidence in this case.

If there are conflicts in the evidence, it is your duty to reconcile the conflicts, if you can, on the theory that each witness has testified to the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony that you cannot reconcile, you must determine which of the witnesses you will believe and which of them you will disbelieve.

In weighing the testimony to determine what or whom you believe, you should use your own knowledge, experience, and common sense gained from day-to-day living. The number of witnesses who testify to a particular fact or the quantity of evidence on a particular point need not control your determination of the truth. You should give the greatest weight to the evidence that convinces you most strongly of its truthfulness.

Record, p. 128. This instruction informs the jury about how to resolve conflicting testimony. Thus, to the extent that Carey's testimony may have contradicted Edward's testimony, we hold that the instructions that were given adequately covered the issue that Appellants' proposed paragraph of instruction would have covered. *See Rieth–Riley,* 325 N.E.2d at 851. Consequently, the trial court did not abuse its discretion when it rejected one paragraph of Appellants' tendered instruction.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

KIRSCH, J., and MATTINGLY–MAY, J., concur.