KEMPF CONTRACTING AND DESIGN, INC., Appellant–Defendant,

v.

Cynthia HOLLAND–TUCKER, Appellee–Plaintiff.

No. 19A02–0712–CV–1059.

Court of Appeals of Indiana.

Aug. 27, 2008.

Renee J. Kabrick, Robert W. Hash, Duffin & Hash, LLP, Indianapolis, IN, Attorneys for Appellant.

George C. Barnett, Jr., Douglas K. Briody, Barnett, LLC, Evansville, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Kempf Contracting and Design, Inc. ("Kempf") appeals the judgment, after a jury trial, in favor of Cynthia Holland–Tucker ("Tucker") in her action against Kempf for negligence. Kempf raises several issues, of which we find the following dispositive: whether the trial court erred when it entered judgment on a second verdict reached by the jury, where, after an initial verdict was reached, the trial court reconvened the jury, gave them new instructions and verdict forms, and allowed the jury to deliberate a second time.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On December 4, 2001, Tucker was visiting the construction site at which her family's new residence was being built. Kempf was the general contractor on the project, and on that day, Jason Kempf ("Jason"), the owner and operator of Kempf, was present at the site. Tucker arrived at the site near lunch break. As Jason was leaving for lunch, he stopped to discuss some of the details of the construction project with Tucker. He led her to his truck, which was parked directly in front of the construction site and facing north, and spread the plans on the tailgate.

Michael Greer, who was working at the job site that day, was also leaving for lunch and decided to wait for Jason. He got into his own truck, which was parked across the street from where Jason and Tucker were standing, and moved the truck to face south in the area directly behind Jason's truck. While Greer remained behind the wheel, his truck rolled slowly backward and trapped both Jason and Tucker between the two trucks. As a result of this accident, Tucker was injured and suffered multiple contusions and bruising of her pelvis and lower back, which caused prolonged pain.

On November 3, 2003, Tucker filed a complaint against Kempf, alleging negligence. A jury trial was held on July 17–20, 2007. At trial, Tucker sought to have John Tierney, a vocational economic analyst, testify on her behalf as to Tucker's capacity to work and earn money after her injuries. In his testimony, Tierney stated that Tucker had sustained a physical disability as a result of the accident. Kempf objected, noting that the existence of a physical disability is a medical determination and Tierney was not qualified to give such an opinion. *Tr.* at 250. The trial court overruled the objection, and Tierney's testimony was allowed.

At the conclusion of the trial, the jury deliberated and rendered a verdict in favor of Tucker. They made the following determination of comparative fault: Plaintiff Tucker, 10%; Defendant Kempf, 30%; and Non–Party Greer, 60%. The jury found that the amount of damages to which Tucker was entitled, disregarding fault, was $325,000. The jury was thanked and discharged, and the trial court entered judgment in the amount of $292,500, representing 90% of the total damages, in favor of Tucker.

Following the dismissal of the jury, Judge Weikert met with the jury members outside the presence of the parties in order to conduct an exit interview. After speaking with the jurors, Judge Weikert recon-

vened the parties' counsel and advised them that the jury members had informed him that, although they had determined that Greer was an employee of Kempf, they had also determined that at the time of the accident, he was not within the scope and course of his employment. *Id.* at 649. Both Tucker and Kempf disputed the meaning and effect of this discovery, and argument was held regarding the proper resolution. No decision was reached at that time, and Judge Weikert called the jury members back into court and admonished them against any outside communication about the case.

After the parties were given an opportunity to submit briefs on the issue to the trial court, a hearing was held on August 7, 2007, in order to determine a proper resolution. Both parties objected to further deliberations. The trial court determined that the original verdict had been based on a faulty jury instruction and verdict form. Having previously drafted a new jury instruction and verdict form, the trial court then gave the jury members the new instruction and ordered them to return to deliberations using the new verdict form. The trial court specifically told them that they were not bound by any previous findings. *Appellant's App.* at 126. On that same date, after additional deliberations, the jury members returned a verdict finding the amount of damages to which Tucker was entitled, disregarding fault, to be $1,000,000. The percentages of fault from the original verdict were the same. *Id.* at 31. After this second round of deliberations, the jury members found that Greer was not acting in the scope and course of his employment at the time of the accident, and consequently, judgment was only entered against Kempf in the amount of $300,000. *Id.* at 31, 128. Kempf now appeals.

## DISCUSSION AND DECISION

Both parties argue that the trial court erred when it entered judgment on the second verdict by the jury after it realized that the jury had been given an erroneous jury instruction and verdict form and then allowed the jury to re-deliberate after they received a revised jury instruction and verdict form. Kempf contends that it is entitled to a new trial because it believed that the jury did not follow the instruction given by the trial court and issued a verdict that was contrary to the instruction and law of the case. Tucker claims that the original jury verdict pronounced in July 20, 2007 was facially sound and accurate, that the trial court erred when it set aside the original judgment, and that the judgment originally entered should be reinstated.

In this case, after the jury's verdict in favor of Tucker on July 20, 2007, the trial court discharged the jury. As was his normal practice, Judge Weikert then went back to the jury room to speak with the jury members and conduct an exit interview. After his discussion with the jury members, Judge Weikert determined that the original verdict had been based on a faulty jury instruction and verdict form, which directed the jurors to combine the percentages of fault attributed to both Kempf and Greer even if they had found that Greer was not acting within the scope of his employment at the time of the accident. After hearing arguments from both parties, the trial court determined that it would reconvene the jury, give them a newly drafted jury instruction and verdict form, which correctly stated the process for determining their verdict, and allow them to re-deliberate and reach a new verdict. Both parties objected to this. After the jurors were allowed to re-deliberate, they again returned a verdict in favor of Tucker.

"From the moment of its official discharge the jury is released from any further obligations or duties in the case" and "may not at any time thereafter be reassembled even on the orders of the judge for the purpose of correcting errors of substance in the verdict or for further deliberation of its verdict." *West v. State,* 228 Ind. 431, 438, 92 N.E.2d 852, 855 (1950). When a jury is officially discharged, it becomes *functus oficio*[1] as a jury in that particular case, and anything it does thereafter, even by order of the trial court, is null and void. *Id.* Based on this, the trial court incorrectly entered judgment after allowing the jury to re-deliberate when it had previously been discharged by the trial court.

Here, the trial court faced a situation where the jury instructions and verdict form were incorrect and improperly directed the jurors to combine the fault percentages of Kempf and Greer even if the jury had found that Greer was not acting within the scope of his employment when the accident occurred. When the trial court realized the problem, it attempted to correct the error by rewriting the instruction and verdict form and allowing the jury to deliberate a second time. This was not the proper procedure, as the jury was no longer able to deliberate having been previously discharged. Because the jury had ceased to exist as an entity to determine the case when it was discharged, it was not able to render a second verdict.

"Indiana courts have the inherent power to grant new trials *sua sponte* and are expressly authorized to do so by [Indiana] Trial Rule 59(B)." *Dughaish ex rel. Du-ghaish v. Cobb,* 729 N.E.2d 159, 169 (Ind. Ct.App.2000), *trans. denied* (2001). When a trial court raises a motion to correct error *sua sponte,* a new trial may be granted if it is determined that prejudicial or harmful error has been committed. Ind. Trial Rule 59(J). While the trial court in the present case had the authority to *sua sponte* grant a new trial under T.R.59, it did not do so. Instead, it improperly re-convened the jury and allowed it to re-deliberate. Therefore, the trial court improperly entered judgment on the jury's second verdict. We vacate the judgment and remand to the trial court with instructions to declare a mistrial and to order a new trial.

Because it is likely to be raised on retrial, we address the issue of whether the expert testimony was properly admitted. Generally, we review a trial court's decision to admit or deny evidence for an abuse of discretion. *Norfolk S. Ry. Co. v. Estate of Wagers,* 833 N.E.2d 93, 100 (Ind. Ct.App.2005), *trans. denied* (2006). The same standard also applies to decisions to admit or exclude expert testimony. *Id.* We only reverse a decision for an abuse of discretion, and an abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Stowers v. Clinton Cent. Sch. Corp.,* 855 N.E.2d 739, 748 (Ind.Ct.App.2006), *trans. denied* (2007).

Kempf argues that the trial court abused its discretion in allowing the testimony of Tierney into evidence. Kempf specifically contends that Tierney was not qualified to testify regarding Tucker's medical diagnosis or whether she had a

---

1. Functus officio is defined as "A task performed. Having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority. Applied to ... an instrument, power, authority, etc., which has fulfilled the purpose of its creation, and is therefore of no further virtue or effect." Black's Law Dictionary 343 (5th ed.1983).

physical disability. Further, Kempf claims that Tierney's testimony regarding Tucker's physical disability was not supported by a proper foundation because such a determination was not based upon any "sound scientific principle." *Appellant's Br.* at 26.

Indiana Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

In determining whether scientific evidence is reliable under Indiana Evidence Rule 702(b), the trial court must determine whether such evidence appears sufficiently valid or trustworthy to assist the trier of fact. *Shafer & Freeman Lakes Envtl. Conservation Corp. v. Stichnoth*, 877 N.E.2d 475, 484 (Ind.Ct.App. 2007), *trans. denied* (2008). "[T]he trial court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* The proponent of expert testimony bears the burden of establishing the reliability of the scientific tests upon which the expert's testimony is based. *Id.* In satisfying Indiana Evidence

Rule 702(b), there is not a specific test or set of prongs, which must be considered. *Id.* We may consider the five factors set out in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993):(1) whether the theory or technique at issue can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique is generally accepted within the relevant scientific community. *Stichnoth*, 877 N.E.2d at 484. "While *Daubert* is not binding upon the determination of issues under Indiana Evidence Rule 702, we have acknowledged the utility of applying the five factors." *Id.*

In the present case, Tucker's expert witness, Tierney, testified regarding his opinion as to the reduction of Tucker's capacity to do work and to earn money after she was injured. As part of this opinion, Tierney determined that Tucker suffered a permanent physical disability. He based this opinion on a definition of physical disability used by the American Community Survey ("ACS"), which is conducted by the United States Census Bureau.[2] The ACS defines physical disability as "conditions that substantially limit one or more basic physical activities such as walking, climbing stairs, reaching, lifting, or carrying." http://www.census.gov/hhes/www/disability/acs.html (last visited Aug. 12, 2008). Tierney then used databases compiled by the government to determine the earning capacity of people with a physical disability who have attained a bachelor's

**2.** "The American Community Survey is a nationwide survey designed to provide communities a fresh look at how they are changing." http://www.census.gov/acs/www/Sbasics/What/What1.html (last visited Aug. 12, 2008).

It provides estimates of demographic, housing, social, and economic characteristics every year for all of the states, as well as all population groups of 65,000 people or more. *Id.*

degree, as Tucker had, and to determine the work life expectancy[3] of people in the same category. He did not look at data regarding people with a physical disability in Tucker's specific profession of engineering, as that information was not available in the databases he utilized. *Tr.* at 43. The databases Tierney used in reaching his opinion were also not specifically geared to Tucker's specific disability, but only to persons with a general physical disability as defined by the ACS.

In *Ollis v. Knecht,* 751 N.E.2d 825 (Ind. Ct.App.2001), *trans. denied* (2002), the expert witness testified that his methodology for determining lost income was generally accepted in the field of economics and that he had used the methodology many times when he testified in the past. *Id.* at 830. Because he failed to provide any peer-reviewed publication or citation to any authority that supported his assertion that the methodology was generally accepted in his field, "the trial court did not have to believe [the expert's] bald assertion." *Id.* Additionally, "the trial court did not have to admit the evidence simply because [the expert] had been allowed to testify previously." *Id.* (citing *Ind. Mich. Power Co. v. Runge,* 717 N.E.2d 216, 236–37 (Ind.Ct. App.1999)). Based on this, we held that the trial court did not abuse its discretion when it excluded the expert's testimony under Indiana Evidence Rule 702(b) "because the [a]ppellants failed to carry the burden of proving to the trial court the scientific reliability underlying the methodology employed by [the expert]." *Id.*

■ Likewise, in the present case, Tucker failed to present any evidence to establish the scientific reliability of Tierney's methodology in determining Tucker's reduction in earning capacity and work life expectancy. As the proponent of the expert testimony, Tucker had the burden of establishing the reliability of the scientific tests upon which the expert's testimony is based. Tucker presented no evidence, however, that this process had been tested or subjected to peer review, or whether there was a known or potential error rate. Further, no testimony was given that standards existed to control how the process was utilized by people in the vocational economic field. At the motion to exclude hearing, Tierney testified that the database and methodology that he used to determine Tucker's future earning capacity were well known in the field of vocational disability and rehabilitation and that private parties have written on the effect that disability has on earnings and employment. *Tr.* at 37, 40. However, Tierney did not name any peer-reviewed publication or provide any citation to authority that supported his bald assertion that his methodology to determine Tucker's lost future earnings was generally accepted in the field of vocational economics. Additionally, even though Tierney may have testified previously regarding this methodology, such fact does not establish that his methodology was scientifically reliable. As a result, we conclude that Tucker failed to meet her burden of proving that Tierney's methodology was scientifically reliable under Indiana Evidence Rule 702(b), and the trial court abused its discretion when it allowed Tierney to testify.[4]

---

3. A work life expectancy is an estimate of how long a person will remain employed and is derived from statistics. *Tr.* at 35. It is a function of four things: (1) age; (2) level of education; (3) gender; and (4) whether a person is disabled or not. *Id.*

4. We do not hold that the methodology utilized by Mr. Tierney is not scientifically reliable. Rather, we hold that Tucker failed to produce sufficient evidence to establish such reliability.

Reversed and remanded with instructions.

VAIDIK, J., and CRONE, J., concur.