## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 15 2016, 7:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Jennifer E. Davis
Garan Lucow Miller, P.C.
Merrillville, Indiana

ATTORNEY FOR APPELLEE

David Andrick
Law Office of Paul A. Rossi, LLC
Lowell, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Paucak and Bernadette Paucak,

*Appellants-Defendants,*

v.

Daniel M. Paucak,

*Appellee-Plaintiff*

June 15, 2016

Court of Appeals Case No.
45A05-1509-CT-1364

Appeal from the Lake Superior Court

The Honorable John R. Pera, Judge

Trial Court Cause No.
45D10-1402-CT-25

**Vaidik, Chief Judge.**

# Case Summary

[1] Jerry and Bernadette Paucak appeal following a jury verdict against them and in favor of their son, Daniel Paucak, based on an injury Daniel suffered when he fell off a ladder at their house. Jerry and Bernadette contend that the trial court erred by denying their pre-trial motion for summary judgment and, during the subsequent trial, by allowing Daniel's impaired-earning-capacity claim to go to the jury. Finding no error, we affirm.

# Facts and Procedural History

[2] On April 27, 2013, Daniel stopped at Jerry and Bernadette's house to see them. Bernadette asked Daniel to check the house's gutters and to clear them out if necessary. Daniel retrieved a ladder from the garage and started doing so. On the north side of the house, he set the ladder in some landscaping rocks along the house and began climbing. Upon reaching the third or fourth rung, the right side of the ladder sunk into the ground. Daniel fell and broke his ankle. As a result of the accident, Daniel is no longer able to work as a spinal fusion consultant, a job that required him to be on his feet in operating rooms for long stretches of time.

[3] Daniel sued Jerry and Bernadette, alleging, among other things, that they knew that the ground on the north side of the house "was soft and wet due to recent rainfall and water accumulation" and should have warned him. Appellants' App. p. 21. Jerry and Bernadette filed a motion for summary judgment,

asserting that there is no evidence that they knew the ground was soft and that, in any event, Daniel's placement of the ladder was the cause of his fall. The trial court found that there were genuine issues of material fact and denied the motion.

[4] Shortly before trial, Daniel withdrew the economic expert he had retained. In response, Jerry and Bernadette filed a motion in limine asking the trial court to preclude Daniel from presenting to the jury an impaired-earning-capacity claim, based on their "[u]nderstanding that the law in Indiana is that an expert witness in the science of economics is necessary to prove loss of future earnings and earning capacity[.]" Appellants' App. p. 185. The trial court denied the motion, allowing Daniel to present the claim without an expert.

[5] At trial, after Daniel testified about how much he earned before the accident and following the accident, Jerry and Bernadette asked the trial court to grant them a directed verdict on Daniel's impaired-earning-capacity claim. They argued that "the jury has no evidence, whatsoever, as to how to arrive at a correct figure for loss of earning capacity, nor do they have evidence that he actually lost any capacity." Tr. p. 674. The trial court denied the motion and told Jerry and Bernadette, "Make your arguments to the jury." *Id.* at 675.

[6] The jury returned a verdict in favor of Daniel. It found Jerry and Bernadette to be 75% at fault for the accident (and Daniel 25%) and found that Daniel had suffered $435,000 in damages. Based on these figures, the trial court entered judgment in favor of Daniel in the amount of $326,250.

[7] Jerry and Bernadette now appeal.

# Discussion and Decision

[8] Jerry and Bernadette's primary argument on appeal is that the trial court should have granted their motion for summary judgment and dismissed Daniel's claims before trial. They also assert that the trial court should have at least kept Daniel's impaired-earning-capacity claim from reaching the jury, by granting either their pre-trial motion in limine or their mid-trial motion for directed verdict.

# I. Summary Judgment

[9] Jerry and Bernadette first challenge the trial court's denial of their motion for summary judgment. Indiana Trial Rule 56(C) provides that a trial court should grant a motion for summary judgment only if "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In an appeal from a trial court's decision on such a motion, we review the matter de novo, applying that same standard. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

[10] Jerry and Bernadette argue that there was no evidence that they knew or should have known that the ground on the north side of the house was wet and soft at the time of the accident. They are incorrect. Daniel testified during his deposition that after he fell, Jerry said he (Jerry) knew that "it had rained for the previous week or whatever it was, couple days" and that "it could be wet, so it

could be potentially dangerous[.]" Appellants' App. p. 179. Furthermore, Jerry conceded during his own deposition that he "should have warned Dan that conditions on the north side of the house tend to get soft and wet and not good stability for the ladder[.]" *Id.* at 131. And Bernadette testified that she knew that the spot where Daniel fell was one of the "mushy parts" of the yard. *Id.* at 147. A reasonable inference from these statements, particularly Jerry's acknowledgement that he "should have warned" Daniel, is that Jerry and Bernadette knew—before Daniel fell—that the ground could be wet and soft and that checking the gutters was a risky task. Therefore, the trial court properly denied summary judgment on this issue.

[11] Jerry and Bernadette also assert that they were entitled to summary judgment because "Daniel was in complete control of whether and where to place the ladder." Appellants' Br. p. 21. They cite *Daisy v. Roach*, 811 N.E.2d 862 (Ind. Ct. App. 2004), where we held that a homeowner could not be held liable to a construction worker injured at the home because the worker's employer was in control of the construction site. There, the work was being done in February, and the employee was on the roof. The employee's supervisor told him to get off the roof and get some supplies, but the ladder he had used to climb onto the roof had been moved, so his supervisor told another worker to put the ladder back up against the house. As the employee was climbing down the ladder, it slid on ice on the frozen ground. The employee fell and was injured and then sued the homeowner. The trial court granted summary judgment to the homeowner, and we affirmed, explaining:

At the time of the accident in February, the ground was frozen and icy, a naturally occurring condition during the winter months in northern Indiana. And while those conditions may have contributed to the accident, they were not the cause. The cause of the accident was the failure of [the employees] to safely secure the ladders they used to climb onto the roof of the house. There is no assertion that [the homeowner] had any control over the manner in which the ladders were used. While it may be true that [the homeowner] had ordered the workers to shut the doors to the home, obtain supplies, and generally directed how he wanted the house constructed, the evidence does not support the conclusion that [the homeowner] was in control of the manner in which the ladders were used. Rather, the only conclusion available from the facts before us is that [the company] controlled the use of the ladders on the site and the area where the accident occurred at the time it occurred.

*Id.* at 867.

[12]     Our holding in *Daisy* was rooted in the principle that "[w]hen an owner lets a contract to another to perform particular work, retaining no control thereof except the right to require a particular standard of completed work, the owner is not liable for the negligence of the party to whom the contract is let." *Louisville Cement Co. v. Mumaw*, 448 N.E.2d 1219, 1222 (Ind. Ct. App. 1983), *disapproved on other grounds by Bagley v. Insight Commc'ns Co.*, 658 N.E.2d 584 (Ind. 1995). However, there is an important exception to this rule: the owner or occupant of premises who discovers the existence of a latent or concealed defect in the property that is not likely to be discovered by an invitee must either correct the condition or warn the invitee of the latent defect's existence. *Id.* at 1221.

Setting aside the fact that this case does not involve a typical "independent contractor" arrangement, the key difference between *Daisy* and this case is that the frozen, icy condition of the ground in *Daisy* was common in northern Indiana and easily discoverable by the workers, whereas there is evidence that the soft, wet condition of the ground in this case was concealed by the landscaping rocks and therefore not likely to be discovered by Daniel. If such a condition existed, and Jerry and Bernadette were aware of it (as discussed above, there is evidence that they were), then they were required to either remedy the condition or warn Daniel before he started his work. *See Louisville Cement Co.*, 448 N.E.2d at 1221. While Daniel's control of the worksite and of the placement and use of the ladder was relevant to his comparative fault (as the jury later found), it did not eliminate Jerry and Bernadette's separate duty to him. The trial court did not err by leaving these fact-sensitive questions to the jury.

## II. Impairment of Earning Capacity

Jerry and Bernadette also contend that the trial court should have granted their pre-trial motion in limine and barred Daniel from making an impaired-earning-capacity claim, based on the fact that Daniel did not have an expert witness to support such a claim. Alternatively, they urge that the trial court should have granted them a directed verdict on the claim at the end of Daniel's case-in-chief.

# A. Motion in Limine

In support of their motion in limine, Jerry and Bernadette cited our decision in *Ollis v. Knecht*, 751 N.E.2d 825 (Ind. Ct. App. 2001), *reh'g denied*, which they said stands for the proposition that a plaintiff seeking damages for impairment of earning capacity must present the testimony of an expert witness. *See* Appellants' App. p. 185-86, 204, 207. We said no such thing in *Ollis*; that case was about the reliability and the probative value of the testimony of the *defendants'* economic expert. 751 N.E.2d at 828-31. With regard to a plaintiff's burden on an impaired-earning-capacity claim, we held long ago that "impaired earning capacity . . . may be proven by both expert and non-expert testimony." *Scott v. Nabours*, 296 N.E.2d 438, 441 (Ind. Ct. App. 1973). The trial court did not err when it denied Jerry and Bernadette's motion in limine.

# B. Directed Verdict

Jerry and Bernadette's final argument is that even if the trial court properly allowed Daniel to make an impaired-earning-capacity claim, the evidence he presented was insufficient to make out such a claim, and they were entitled to a directed verdict on the issue. We review the decision on a motion for directed verdict de novo, applying the same standard that governed the trial court in making its decision. *State Farm Mut. Auto. Ins. Co. v. Noble*, 854 N.E.2d 925, 931 (Ind. Ct. App. 2006), *trans. denied*. We examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the nonmovant, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.* If there is

evidence that would allow reasonable people to differ as to the result, a directed verdict is improper. *Id.*

[17] In order to recover on an impaired-earning-capacity claim, an injured plaintiff must prove (1) that the injury caused an inability to engage in his vocation and (2) the difference between the amount the plaintiff was capable of earning before the injury and the amount he is capable of earning thereafter. *Scott*, 296 N.E.2d at 441. Jerry and Bernadette acknowledge that Daniel presented evidence that he is unable to continue working as a spinal fusion consultant because of the need to stand for long periods; however, they question the extent of his financial loss, if any, arguing that Daniel's testimony in this regard "was nothing but speculation[.]" Appellants' Br. p. 28. We disagree.

[18] Daniel testified that he was earning about $87,000 per year before the accident but had earned only about $38,000 per year since the accident, working as a DJ and in medical sales. Tr. p. 542-69. He presented a variety of tax forms and other documents that substantiated this testimony. *See* Plaintiff's Ex. 16. He also testified that he thought he would work for approximately twenty-one more years, until he is sixty-seven years old. Tr. p. 567. This evidence was not "mere conjecture or speculation" by Daniel. *Scott*, 296 N.E.2d at 441 (quoting 18 A.L.R.3d 88, 97 (1968)). And while Daniel's calculations were not highly scientific, he was not required to "show conclusively or with absolute certainty that earning capacity has been impaired[.]" *Id.* He had to show only a "reasonable certainty or reasonable probability" of impairment. *Id.* He did so,

and the trial court did not err by denying Jerry and Bernadette's motion for a directed verdict and letting the issue go to the jury.

[19] Affirmed.

Barnes, J., and Mathias, J., concur.